Nov. Term,
1836.

WALLACE
v.
VIGUS.

---

## WALLACE v. VIGUS.

The declaration in assumpsit against a common carrier by water, was for the non-delivery of a certain quantity of salt and steel, which he had received to be carried, &c. *Held*, that a bill of lading in which the defendant acknowledged the receipt, not only of the salt and steel but also of certain other articles,—was not objectionable as evidence on the ground of variance.

*Held*, also, that as the suit was for the non-delivery of the goods, and was not brought until two years after the defendant had received them,—it was no defence to the suit, that the river on which the goods were to be carried, was, for four months after they were received, too low for the navigation of the defendant's boat.

*Held*, also, that the measure of damages in such case, if the plaintiff succeed, is the wholesale value of the goods at the place at which they were to be carried,—deducting the price of freight.

Friday,
March 24.
1837.

ERROR to the *Vigo* Circuit Court.

BLACKFORD, J.—*Vigus* sued *Wallace* in assumpsit for the non-delivery of goods, which, as a common carrier, the latter had undertaken to carry by water from *Cincinnati* to *Tiptonsport*, on the *Wabash* river. The declaration states that the defendant, being master and commander of the steam-boat

*Lafayette,* lying at *Cincinnati,* received on board there from the plaintiff divers goods, viz. 63 barrels of salt of the value of 500 dollars, and 500 pounds of steel of the value of 200 dollars; that the defendant, in consideration of certain freight to be paid him, undertook to carry the goods safely to *Tiptonsport* without delay, (the dangers of the river and unavoidable accidents only excepted); that though a reasonable time has elapsed, and the delivery of the goods has not been prevented by the dangers of the river, &c., yet the goods have not been delivered, &c. To the plaintiff's damage 1,000 dollars. The defendant pleaded non-assumpsit. Verdict in favour of the plaintiff for 429 dollars, and judgment on the verdict.

On the trial, the plaintiff offered in evidence the bill of lading, which the defendant objected to. The bill of lading acknowledges the receipt of several articles, besides the salt and steel mentioned in the declaration; and it was therefore objected to on the ground of variance. The Court correctly overruled the objection. There is not, in the declaration, any description of the bill of lading, by which the plaintiff's proof was to be confined. The complaint is for receiving the salt and steel and not delivering them at the place to which they were to be carried. The bill shows the defendant's receipt of those things, and that is all the plaintiff introduced it to prove. It shows, to be sure, the receipt also of other articles, but that is no objection to its admission. The other articles may have been carried and delivered according to the contract; at any rate, the plaintiff makes no complaint respecting them. The remarks of Justice *Buller,* in the case of *Babtiste* v. *Cobbold,* 1 Bos. & Pull. p. 7, are in favour of the admission of this evidence. There is no written contract described, and the proof agrees with the declaration as far as the declaration goes.

After the defendant had given some testimony relative to the low state of the *Wabash* river in the spring of 1833, the plaintiff offered to prove that, from *March* until *July* of that year, keel-boats could pass from the rapids below *Vincennes* up to *Tiptonsport.* This evidence was objected to, but the Court admitted it. We shall not stop to inquire whether this evidence was admissible or not; for supposing it not to be admissible, there was proof enough without it to authorise the verdict for the plaintiff. Two years had elapsed from the time

Nov. Term, the goods were shipped before this suit was brought. The
1836.    non-delivery of the goods is the breach assigned. The defend-

WALLACE  ant received the goods at *Cincinnati* on board of his steam-
v.    boat, and undertook to carry them to *Tiptonsport*, and there
VIGUS.   deliver them to the plaintiff. The goods were never delivered.
The defendant proves that from *March* 1833, when he receiv-
ed the goods, until *July* following, the *Wabash* river was not
high enough to enable him to get up to *Tiptonsport* in his
steam-boat; and on this evidence he relies for his justifica-
tion,—not merely for any delay in delivering the goods,—but
for his not having delivered them at all, although two years
had elapsed from the time he received them. The evidence
is no defence to the action.

The case presents but one other question. The Court in-
structed the jury that if they found for the plaintiff, the mea-
sure of damages should be the wholesale value of the articles
at *Tiptonsport*, deducting the price of freight. We see no ob-
jection to this instruction. The ground of action is, that the
defendant had received the goods as a common carrier, to be
safely delivered to the plaintiff at *Tiptonsport;* but that the
goods, without any legal excuse, had not been delivered. Un-
der these circumstances, if they are true, the defendant is
bound to pay for the goods. The only question is, whether
the jury were to be governed by the value of the property at
*Cincinnati* or at *Tiptonsport?* This question is settled by au-
thority, in conformity with the opinion expressed by the Cir-
cuit Court. 2 Kent's Comm. 2d ed. p. 600, and the authorities
there cited.

*Per Curiam.*—The judgment is affirmed with costs. To
be certified, &c.

*J. Whitcomb*, for the plaintiff.

*J. Farrington* and *S. B. Gookins*, for the defendant.