# BELKNAP,

## JULY TERM, A. D. 1857.

## HACKETT *v.* B., C. & M. RAILROAD.

A confession is an admission of a cause of action, to the extent of its terms only.

In questions relative to distances, and the dimensions and quantities of things, a witness can not testify without an implied expression of opinion, and no objection can be sustained on that account.

A common carrier is not liable for the whole value of property damaged by his want of care, so long as its character is not so changed but that it may be applied to the ordinary uses of such property, though he will be answerable for the depreciation in its value by reason of its being rendered unfit for some particular uses.

It is not amiss for a judge to state the rule of damages in cases having some resemblance to that before him, in order to suggest that they do not apply to that case.

IN CASE, the plaintiff declares that the defendants were, on, &c., and since, common carriers, for hire, from Union Bridge, in Sanbornton, to Boston; the plaintiff on, &c., was possessed of eight thousand feet of pine boards, of the value of $160, and delivered them to the defendants to be safely carried from said Bridge to Boston, for a price to be paid by the plaintiff to them therefor, and to be delivered to J. C. Hackett for the plaintiff, and they received them to be so carried; yet they have not since, &c., delivered them to J. C. Hackett for the plaintiff, but the boards were spoiled for want of due care by the defendants, and rendered valueless, to the plaintiff's damage, &c.

In a second count he declares that the defendants, on, &c., were the owners of cars for the conveyance of freight on their railroad from, &c., to, &c., for hire, and undertook safely to carry for the plaintiff, from, &c., to, &c., other boards, &c., for a price agreed to be paid by the plaintiff, and it was their duty to use due care that the said lumber should be safely carried, &c.; yet they did not use proper care, &c., but neglected so to do, and on, &c., suffered said boards to be spoiled and rendered without value, &c.

The defendants filed a confession and plea, as follows :

" BELKNAP, &c.

" The defendants come and defend, &c., when, &c., and confess the plaintiff's said action, and that he is entitled to recover damages thereon to the amount of twenty dollars, and no more, and as to the residue of the claim, the said defendants say they are not guilty," &c.

The plaintiff's evidence tended to show that on the 28th of January, 1854, he delivered to the defendants, at Union Bridge, about eight thousand feet of pine boards, which were loaded on two cars for Boston. In due course they should arrive there the next day. They were consigned to J. C. Hackett, a stair-builder, who had ordered the lumber as seasoned lumber, without having seen it, and agreed to pay for it $20 per thousand feet, if good as represented. On January 31st, J. C. Hackett received a notice from the agent of the B. & M. Railroad, over which the defendants carry freight to Boston, that there was at their depot, in B., eight thousand feet of pine boards, ready for delivery to him on payment of freight. He called the same day for the lumber, and was informed that it had not arrived, but had met with an accident, and had been thrown off the cars, and so delayed. He received no other notice of the arrival of the lumber, but, about three weeks after the notice, he saw at the depot some lumber, which was pointed out to him as the same. It was covered with snow and ice, and unfit for his use it was so wet, and he therefore refused to receive it.

To show the value of such lumber, the plaintiff called a wit-

ness, who testified that he sawed this lumber out of a good lot of logs, of old growth, and that the boards were stuck up from the spring of 1853 till they were hauled to the cars, and that he sold lumber like this, about that time, for an average price of $15 a thousand. The defendants excepted to the competency of this evidence, but the court overruled the exception.

The defendants' counsel, in his opening, stated that the defence would show that the lumber was carried to Boston as soon as possible. The cars were thrown from the track by an accident, for which the defendants were not responsible. The lumber, when surveyed in Boston, fell short a little, and the defendants had confessed the amount of twenty dollars to cover that deficiency. He denied the plaintiff's right to recover any thing.

The plaintiff's counsel contended that the defendants, by their confession, were estopped to deny the cause of action, and that the only question was as to the amount of damages.

The court ruled that the confession admits some cause of action alleged, and the amount of $20 damages from such cause; that the damages were not necessarily the value of the property, and that by a verdict for the plaintiff the property did not become the defendants'. There might be a loss by the neglect or default of the defendants, for which damages might be recovered, and other loss or damage by accidents inevitable, for which the defendants would not be liable, and evidence was admissible on the part of the defence to show how the damage accrued.

The defendant excepted to this ruling. Upon the question of damages the court charged as follows:

The defendants were bound to convey in a reasonable time, and deliver the lumber, or do something equivalent to a delivery. It was not clear what was such equivalent, whether merely unloading from the cars ended the liability of a common carrier without notice; or whether the goods must be set apart, so that the consignee might by reasonable diligence obtain them, or whether any notice was essential. This point was not material here, because the injury here, and the delay for which damage was claimed, occurred before the transit ended. If the lumber

was actually delivered, or if the defendants did all their duty as an equivalent to delivery, so that the defendant was only in fault for such actual injury and delay, the damages would be the difference between the value of the lumber at Boston, if safely and seasonably conveyed, and its actual value when at Boston and delivered, or ready for delivery.

If there was no actual delivery, by the fault of the railroad or its officers, and no equivalent to a delivery, the damages would be the full value of the lumber in Boston, deducting the freight.

It had been held that the railroad was bound to give a notice of the arrival of freight to discharge its duty, and that such notice was equivalent to delivery, but that no such question arose here.

If the defendant gave a false notice and never gave any other, and by this means the plaintiff lost his lumber, and never had an opportunity to receive it, the defendants would be liable for its full value. This would be such a mistake and want of care as to make the defendants liable for the whole value.

A mere delay of a few days, or weeks, with slight injury to the property, would not make the railroad liable for the whole value.

If the lumber was, by the default of the defendants, substantially changed in its character, so that it would not answer the ordinary purposes of lumber of this description, neither the consignee nor the plaintiff was bound to receive it. But such injury as to render it unfit for stair-building, or such special purposes as the consignee designed it for, would not necessarily be such a change as was intended by the court. The change must be such as would substantially charge its general character; as, for illustration, such a change as might happen to fruit and vegetables by being frozen, which would leave them, perhaps of some value, but unfit for ordinary purposes.

The loss of the contract of sale, at $20 per thousand, was no part of the damage to be considered.

The jury rendered a verdict for $49.26 above the amount confessed.

The defendants move to set it aside, and for a new trial, for error in the charge of the court as to the damages, and in the rulings above mentioned.

*H. A. Bellows*, for the defendants.

I. The testimony of Kimball, that he sold lumber *like this,* about that time, for the average price of $15 per thousand, was incompetent. The objection was to his being allowed to make the comparison, instead of describing the lumber. It was like stating that he sold a horse or pair of oxen, or a farm, like another in question, at certain prices.

II. The plaintiff, in both counts, goes upon the ground of negligence, by which the lumber was impaired or spoiled, not for mere non-delivery. The gist of the action is the negligence. The court instruct the jury that the confession admits *some* cause of action alleged ; or, in other words, admits the negligence charged, and damage to the amount of twenty dollars. The question then is, was the confession any *proof of negligence* on the trial of this issue, which we hold regards only matters beyond the confession ? The confession is of the nature of a distinct plea, and the plaintiff can not use it as evidence of the fact which the defendants dispute in another plea. 1 Ch. P. 563, and notes ; 5 Taunt. 228 ; 1 Marsh 33 ; *Bump* v. *Smith*, 11 N. H. 48 ; *Cilley* v. *Jenness*, 2 N. H. 87, and cases cited, page 90 ; Stark. Ev. 295, page 1 ; *Kimball* v. *Bellows*, 13 N. H. 58.

So the defendants may plead tender as to part and the general issue as to the residue, and though the tender is a confession of the part, it is not evidence, on trial, of the general issue. A defendant may plead tender as to part, and general issue as to the residue, and he may plead with the general issue a release, discharge in bankruptcy, accord and satisfaction, and a variety of other pleas, which confess and avoid the plaintiff's action ; 1 Ch. Pl. 562, and notes ; and yet, although these are formal admissions of the facts alleged, 1 Ch. Pl. 525, 526, they are not evidence on the trial of the general issue, denying the

facts alleged. The jury must have understood that the confession *was* proof of the negligence on this issué. And there was substantially nothing left but the amount of damages. Although of course it was open to the defendants to show that some of the injury happened from other causes, yet it was taken to be proof of negligence.

III. On the subject of the damages, the charge of the judge was calculated to mystify and mislead the jury. In one part of the charge it was asserted that it was not material to inquire whether there was a delivery or its equivalent, so as to terminate the defendants' responsibility as carriers; and the reason assigned is, that the injury here, and delay, for which damages are claimed, occurred before the transit ended. Then it was stated that if the lumber was actually delivered, or the defendants did all their duty as an equivalent, so that the defendants were only in fault for such actual injury and delay, the damages would be the difference between the value of the lumber as it was, and as it would have been if duly and seasonably delivered. But if no actual delivery, or its equivalent, and this by fault of the defendants, then the damage would be the full value of the lumber at Boston, deducting freight.

So the jury must have understood that if there was no delivery or its equivalent, by fault of the defendants, (and what would be such delivery the judge forebore to state,) the damages were to be the value of the lumber, deducting freight. But the suit, we say, is not for non-delivery, but for injury to the lumber. So he clearly includes delay before the transit ended.

The judge again states that the question of the effect of notice did not arise, but charges the jury that if the defendants gave a false notice, and never gave any other, and the plaintiff lost his lumber by the means, this would be such a mistake and want of care as to make the defendants liable for the whole.

Clearly, then, the court, in this part of the charge, instruct the jury that the fault of the defendants in not giving notice

after the arrival of the lumber, might charge them with the whole value of it; and there was evidence tending to show no notice for about three weeks, and also that the first notice was not true. The suit being for the injury to the lumber, damages could not be recovered for neglecting to deliver or notify. *Edgerly* v. *Emerson*, 3 Foster 556.

And we say, also, that after the arrival of the lumber at the terminus of their road, and ready for delivery, their responsibility as common carriers terminated, and after that they are holden as depositaries. Angell Carriers, secs. 301, 2, 3, 4, and cases cited, and sec. 75, and note 4, p. 81; *Thomas* v. *B. & P. Railroad*, 10 Met. 472; *Norway Plains* v. *B. & M. Railroad*, 1 Gray 263, 273; *Garside* v. *T. & M. Nav. Co.*, 4 T. R. 582; *Smith* v. *N. & L. Railroad*, 7 Foster 93; see *Moses* v. *B. & M. Railroad*, 4 Foster 71.

*Vaughan*, for the plaintiff.

I. If the plea of the defendants does not admit the plaintiff's cause of action, then the confession of damage made by them is folly on their part. Although there are two counts in the plaintiff's declaration, the cause of action is single and distinct. Both counts are for negligence. If the defendants admit their liability at all, or to any extent, it must be taken as an admission of the cause of action, of the negligence alleged by the plaintiff, as otherwise they are not liable in this suit. If there was no negligence, then the plaintiff had no cause of action, and the defendants were not liable in damages; but having by their plea confessed the plaintiff's action, and that he is entitled to recover damage, &c., they must thereby have confessed the negligence, and the only question remaining was, as to the extent of that negligence.

Upon such a plea the plaintiff, if he so chooses, is entitled to judgment. How can this be, if it is not a confession of the cause of action, if an inquiry into that is still open and necessary. Suppose the defendants had confessed for the whole amount

claimed, would not the plaintiff have been entitled to judgment for such amount without further proof? 1 Tidd's Prac. 503, ch. 23; Tidd's Prac. Forms 111, for form of plea.

A plea of tender, even with the general issue, admits the cause of action, and the only matter for a jury to pass upon is, whether any thing is due beyond the sum tendered; especially must this be so, when there is but one cause of action in the declaration. So a plea of release, discharge in bankruptcy, accord and satisfaction, all admit the cause of action.

II. As to the admission of the testimony excepted to, see *Whipple* v. *Walpole,* 10 N. H. 130.

The evidence in the case cited is more exceptionable than in this case, as it here appears that the witness sold timber "like this," and so knew the market value.

III. If the instruction of the court, in relation to the rule for assessing damages, was erroneous, the error was against the plaintiff and in favor of the defendants, and they have no cause for complaint.

IV. What was said by the court as to "delivery," or "equivalent to a delivery," could have had no effect on the jury, as they were told that no question in regard to it arose in the case.

BELL, J. A confession is an admission of a cause of action, as alleged in the declaration, to the extent of its terms, and no further. If the defendants had said as to one thousand of the boards described, he admits the plaintiff's action, it could not be reasonably contended that this was an admission of liability for the remaining seven. Such an admission is to be fairly construed, and must then be taken as it is made. The policy of the law relative to confessions, is to enable the defendant, by an admission of so much of the claim as he thinks fit, to limit the controversy to the matters really in dispute, without in any respect changing the situation of the parties as to the matters not admitted. It would go far to defeat the entire object of a confession, if it were held to contain any implied admission as to the matters left open to controversy. A confession may doubtless be made in such

form as to admit, as many pleas do, the entire cause of action alleged, and it may be in many cases judicious to make the confession in that mode to save expense, as, if a party sued upon a judgment should admit the recovery of the judgment, and that a certain sum was due upon it, and plead payment of the residue a release, or the like. But where a cause of action is in its nature divisible, and the defendant confesses the cause of action in part only, it is immaterial in what terms or in what manner the extent of the confession is limited ; it will not be construed to extend beyond those terms. And we do not understand that the rule in this respect differs from that applied in cases of tender, or the payment of money into court. Either of these may be limited to a part of the cause or causes of action alleged by the plaintiff, and they will not in such case be held, by any implication, to apply to any other cause, or part of a cause of action alleged. The ruling of the court upon this point seems to us entirely correct and proper. The cause of action was in its nature divisible, and the defendants might admit some negligence or fault of their servants, by which the plaintiff's boards were injured to the amount of twenty dollars. They might consistently deny that they were guilty of any other or greater fault. And though it is complained that the jury must have been misled by it, we are unable to perceive any such necessary or natural result.

It is objected to the testimony of Kimball that he was permitted to describe the lumber, which he had known sold at a certain price, as like the lumber in dispute, instead of describing it and leaving the jury to judge of its similarity. Though the opinions of witnesses are not admissible in evidence generally, except on questions of skill and science—*Patterson* v. *Colebrook*, 9 Foster 94 — yet this rule admits of a large class of exceptions, from the nature of the subjects inquired about. In most cases, where a witness is examined as to distances, or as to the dimensions, weight, or any quality of the matter in question, he can not testify, except by the use of language, which necessarily implies his opinion, and if he attempts to describe the article, so as to enable

the jury to judge, the language of his description equally contains an expression of his opinion. From the nature of the case such testimony must be admitted, and its weight is to be tested by the means and opportunities of the witness to make reliable observations, and his apparent ability to judge correctly. This distinction is recognized in the case last cited, where, it is said, a witness in giving a description of the subject matter in dispute must, oftentimes, necessarily exercise, to some extent, his judgment, and his statements can not be entirely free from opinion. But that is a different matter from drawing conclusions from detailed or admitted facts, and expressing an opinion in regard to them. It would be one thing for a witness to say that there was a ditch in the road about a foot deep, or a log extending to the middle of the road, and quote another to express the opinion that neither of them caused the accident, or that they did.

To judge of the qualities of lumber, is, to a great extent, a matter of art and and skill peculiar to those whose business renders them conversant with matters of this kind. The opinion of the witness, if he is shown to possess skill, is, in such case, properly admissible. The evidence tended to show the witness a man of skill, and if no doubt was cast upon this point, his opinion was competent on that ground.

It is a perfect defence for a common carrier to show that the damage happened in consequence of some one or more of that class of occurrences, such as those denominated acts of God, or of public enemies, for which he is not by law accountable. Edw. Bail. 454; Story Bail. 319; Ang. Carriers 46, 67. The ruling on this point seems to us free of any just exception.

The rules of damages stated to the jury seem to us correct. They were, 1. That if there was no actual delivery of the goods at the end of the journey, by the fault of the railroad or its officers, and no equivalent of a delivery, the damages would be the full value of the lumber in Boston, as we understand it, at the time it should have been delivered, deducting the freight, if that had not been paid. This rule is sustained by the authorities. Edw. Bail. 570 ; Ang. Carriers 453 ; Sedg. Dam. 370 ;

*Brackett* v. *McNair*, 14 Johns. 170 ; *Wallace* v. *Vigors*, 4 Blackf. 260 ; *McGregore* v. *Kilgore*, 6 Ohio 143 ; *O'Conner* v. *Foster*, 10 Watts 418.

2. If the lumber was delivered, or the carrier did what was equivalent to a delivery, but the goods were unduly delayed or damaged, the damages would be the difference between the value of the lumber at the place of delivery, if safely and seasonably conveyed, and its actual value when delivered, or ready for delivery. This rule rests on the same principle as the last. The owner then is made neither better nor worse by the failure of the carrier to discharge his obligations. Ang. Carriers, sec. 490 ; *Bowman* v. *Teal*, 23 Wend. 306.

3. Mere delay for a few days or weeks, with slight injury to the property, would not make the carrier liable for its whole value.

4. If the lumber, by the default of the carrier, was substantially changed in its character, so that it would not answer the ordinary purposes of lumber of this description, neither the consignee nor the owners was bound to receive it, and the carrier would consequently be answerable for its whole value. But such an injury as to render it unfit for stair-building, or other special purpose for which the consignee designed it, while it remained fit for all the ordinary uses of such property, would not be such a change of character, and the consignee or owner would be bound to receive it, and the carrier would be answerable, not for its value, but for the damage only.

5. By a verdict for the plaintiff the property did not become the defendants', unless he recovered for its entire loss. If the damages were for delay or partial damage, the property remained the former owner's, and he was entitled to demand and recover it of the carrier.

The writ sets forth two distinct causes of action in distinct counts. The first alleges that the boards were not delivered, as they ought to have been, but instead, they were wholly spoiled, and rendered valueless, for want of due care and preservation by the defendants. The second alleges that the defendants did

not use due and proper care ; that said lumber should be conveyed safely and securely, but suffered it to be wholly spoiled, and rendered without value for want of due care and attention.

Under either of these counts the plaintiff could recover for the damage and spoiling of the lumber ; under the second he could recover for nothing else.   Under the first he might recover for an entire non-delivery of the goods, or for any damage from neglect to deliver them seasonably.

If the plaintiff claimed to recover for the non-delivery, and the defence had raised the question whether the defendants had not done what in law constituted a delivery, or the equivalent of a delivery, it would have been the duty of the court to have given to the jury suitable instructions upon that point, which was not done in this case ; the court observing that it was not clear what was such equivalent.   But from the history of the case, as well as from the statement of the court, that that point was not material here, because the injury and the delay for which damage was claimed occurred before the transit ended, and from the brief of the defendants' counsel, we are satisfied that the question was not whether the railroad had done what was equivalent to a delivery, but rather whether the injury suffered by the boards was such as entitled the plaintiff to regard it as a total loss ; and in this state of the case it was clearly no part of the duty of the court to discuss what might be a sufficient delivery, or the equivalent of a delivery.   It might, upon the facts stated, have been contended that the pointing out of the lumber to the consignee, and his refusal to receive it, was a sufficient offer to deliver the lumber, to put an end to the liability of the railroad as common carriers, and to discharge their duty and contract, as such, in regard to the delivery, as to so much of the lumber as was not totally destroyed or rendered unfit for the ordinary uses to which it could be applied.   But it does not appear that any such question was made.

It appears that the railroad gave to the consignee a notice of the arrival of the lumber, which proved upon his calling for it to be incorrect, the train having met with an accident by which its

arrival had been delayed. It does not appear that the plaintiff was prejudiced by the mistake in the notice. The observations of the court as to what had been held as to the duty to give notice, and its effect, was merely introductory to the statement that no question of that kind arose in the case, and it was therefore immaterial; and the same remark applies to the observation of the court, that if the plaintiff had lost his goods by reason of a false notice, the defendants would be liable, as it did not appear that any loss of the goods resulted from that cause.

It does not appear that the defendants could have been prejudiced by the observation of the judge relative to a delivery, or in relation to the notice, the evident object of them being to suggest to the jury that no questions arose relative to these things, and thus to relieve the case from irrelevant matters.

The exceptions taken in the case must be overruled, and

*Judgment rendered on the verdict.*