### FRANKLIN EVANS vs. FITCHBURG RAILROAD COMPANY.

In an action against a railroad company to recover for injuries done by one of the plaintiff's pair of horses to his mate, while being carried by the defendants, the defendants requested a ruling that if they used due care and provided a suitable car, and the injuries were caused by the peculiar character and propensities of the horses, such as fright or bad temper, they were not liable; the judge refused this ruling, but ruled that if the horse was injured by his mate in an outburst of viciousness, quite unusual in horses worked together, the jury might find for the defendants. *Held*, that the defendants had good ground of exception.

A railroad company is not responsible for injuries inflicted by one horse upon another while they were being carried in the company's car, if the injuries were caused by the fault or neglect of the owner of the horses in attaching their halters or not removing their shoes.

TORT against common carriers to recover for injuries to the plaintiff's horse. At the trial in the Superior Court, before *Rockwell*, J., the plaintiff offered evidence that he delivered to the defendants to be carried on their road two horses, which were kept and used as a span; that he saw them placed and fastened by their halters at the end of a car in separate corners; that when the horses arrived they were in the same position, but one was seriously injured on his hind legs, and his halter rope was hitched so tightly around his lower jaw as evidently to have caused him pain; that the injuries were caused by kicks from the other horse; and that the horses had been previously kind and well behaved.

The defendants introduced evidence tending to show that the car was suitable for transporting horses; that it was usual to fasten horses in the corners as was done with these; that the plaintiff fastened the horses, and that the defendants did not change the fastening and knew of nothing peculiar about it.

It appeared that the horses were shod, and the defendants offered testimony that although it was customary to transport horses in that condition, the owners for greater safety sometimes had the shoes removed.

The defendants requested the judge to instruct the jury " that if the defendants used due care, and provided a suitable car, and the injuries were caused by the peculiar character and propensities of the animals, such as fright or bad temper, the defendants were not liable; and that if the injuries were caused by the fault

or neglect of the plaintiff, or his agents, in attaching the halter rope to the horse's jaw, or in not removing the shoes, the defendants were not liable."

The judge declined so to instruct the jury, and instructed them as follows : " The defendants being common carriers, and the horses being intrusted to them as such, if there is legal excuse for them in regard to the injury, the burden of proof is upon them to show it, it being proved that the injury happened while the horses were in transit. The defendants had the charge of stowage in their cars, and were responsible for the way the horses were put into the cars, unless there was some special agreement about the stowage, or unless the matter of placing and securing the horses in the cars was directed by the plaintiff. But there may be such an outburst of viciousness on the part of one of the horses, or both, occasioning the injury, as may relieve the defendants from liability, and if the defendants have satisfied the jury that a proper disposition of the horses in the car was made and proper precautions and care used by the defendants during the journey, and that the injured horse was attacked and kicked in the severe manner described by the evidence, in an outburst of viciousness on the part of his mate, quite unusual in horses worked together, the jury may find the defendants not liable."

The jury returned a verdict for the plaintiff, and the defendants alleged exceptions.

*W. S. Stearns,* for the defendants.

*R. D. Smith,* for the plaintiff.

AMES, J. According to the established rule as to the liability of a common carrier, he is understood to guarantee that (with the well known exception of the act of God and of public enemies) the goods intrusted to him shall seasonably reach their destination, and that they shall receive no injury from the manner in which their transportation is accomplished. But he is not, necessarily and under all circumstances, responsible for the condition in which they may be found upon their arrival. The ordinary and natural decay of fruit, vegetables and other perishable articles ; the fermentation, evaporation or unavoidable leakage of liquids ; the spontaneous combustion of some kinds of goods ; are

matters to which the implied obligation of the carrier, as an insurer, does not extend. Story on Bailments, §§ 492 *a*, 576. He is liable for all accidents and mismanagement incident to the transportation and to the means and appliances by which it is effected ; but not for injuries produced by, or resulting from, the inherent defects or essential qualities of the articles which he undertakes to transport. The extent of his duty in this respect is to take all reasonable care and use all proper precautions to prevent such injuries, or to diminish their effect, as far as he can ; but his liability, in such cases, is by no means that of an insurer.

Upon receiving these horses for transportation, without any special contract limiting their liability, the defendants incurred the general obligation of common carriers. They thereby became responsible for the safe treatment of the animals, from the moment they received them, until the carriages in which they were conveyed were unloaded. *Moffat* v. *Great Western Railway Co.* 15 Law T. (N. S.) 630. They would be unconditionally liable for all injuries occasioned by the improper construction or unsafe condition of the carriage in which the horses were conveyed, or by its improper position in the train, or by the want of reasonable equipment, or by any mismanagement, or want of due care, or by any other accident (not within the well known exception) affecting either the train generally or that particular carriage. But the transportation of horses and other domestic animals is not subject to precisely the same rules as that of packages and inanimate chattels. Living animals have excitabilities and volitions of their own which greatly increase the risks and difficulties of management. They are carried in a mode entirely opposed to their instincts and habits ; they may be made uncontrollable by fright, or, notwithstanding every precaution, may destroy themselves in attempting to break loose, or may kill each other. If the injury in this case was produced by the fright, restiveness, or viciousness of the animals, and if the defendants exercised all proper care and foresight to prevent it, it would be unreasonable to hold them responsible for the loss. *Clarke* v. *Rochester & Syracuse Railroad Co.* 4 Kern. 570. Thus it has been held that if horses or other animals are transported by

water, and in consequence of a storm they break down the partition between them, and by kicking each other some of them are killed, the carrier will not be held responsible. *Laurence* v. *Aberdein*, 5 B. & Ald. 107. Story on Bailments, § 576. Angell on Carriers, 214 *a*. The carrier of cattle is not responsible for injuries resulting from their viciousness of disposition, and the question what was the cause of the injury is one of fact for the jury. *Hall* v. *Renfro*, 3 Met. (Ky.) 51. And in a New York case, *Conger* v. *Hudson River Railroad Co*. 6 Duer, 375, Mr. Justice Woodruff says, in behalf of the court : " We are not able to perceive any reason upon which the shrinkage of the plaintiff's cattle, their disposition to become restive, and their trampling upon each other when some of them lie down from fatigue, is not to be deemed an injury arising from the nature and inherent character of the property carried, as truly as if the property had been of any description of perishable goods."

It appears to us therefore that the first instruction which the defendants requested the court to give should have been given. If the jury found that the defendants provided a suitable car, and took all proper and reasonable precautions to prevent the occurrence of such an accident, and that the damage was caused by the kicking of one horse by another, the defendants were entitled to a verdict. That is to say, they might be held to great vigilance, foresight and care, but they were not absolutely liable as insurers against injuries of that kind. As there was evidence also tending to show that the halter was attached by the plaintiff to the jaw of one of the horses in a manner which might cause or increase restiveness and bad temper, and also evidence that their shoes were not taken off, the defendants were entitled to the instruction that if the injuries were caused by the fault or neglect of the plaintiff in these particulars, he could not recover. This court has recently decided that for unavoidable injuries done by cattle to themselves or each other, in their passage, the common carrier is not liable. *Smith* v. *New Haven & Northampton Railroad Co*. 12 Allen, 531. This is another mode of saying that a railroad corporation, in undertaking the transportation of cattle, does not insure their safety against injuries occasioned by their viciousness

and unruly conduct.  *Kendall* v. *London & Southwestern Rail-way Co.* L. R. 7 Ex. 373.  The jury should therefore have been instructed that if the injury happened in that way, and if the defendants exercised proper care and foresight in placing and securing the horses while under their charge, they are not to be held liable in this action.  Upon this point the burden of proof may be upon the defendants, but they should have been permitted to go to the jury upon the question whether there had been reasonable care on their part.

It appears to us also that the instruction actually given was not a full equivalent for that which was requested, and which, as we have seen, should have been given.  It was not necessary to the defence to show that the injury was caused in " an outburst of viciousness."  The proposition should have been stated much more generally, and the jury should have been told that if from fright, bad temper, viciousness, or any other cause without fault on the part of the defendants, the horses became refractory and unruly, and the kicking and injury were occasioned in that manner, it was an unavoidable accident, for which the defendants were not liable.                    *Exceptions sustained.*