### HARRIS FEINBERG v. DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

1. The plaintiff's live stock, cows and calves, was accepted, freight paid and receipt given, for transportation, without express contract or limitation. Being delayed by a snow storm, they were put in the stock yard; some died, others were injured by cold and exposure. *Held*, that the defendant was liable for damages as a common carrier.
2. Not relieved by showing that the plaintiff's servant, riding on a free pass, given by the company's freight agent, accompanied the cattle.

On rule to show cause.

The plaintiff, Harris Feinberg, purchased sixty cows and forty-three calves at the Union stock yard, East Buffalo, New York, and employed the defendant company to transport them from that point to Secaucus, Hudson county, New Jersey, March 12th, 1888. Part of the freight was paid in advance and part, under protest, on delivery of the cattle, March 17th,

1888.  They were driven by boys in the employ of the
defendant from the Union stock yard to the defendant's stock
yard, three miles, and soon after their arrival were loaded on
the cars.  Before this was finished, at about half-past four
o'clock in the afternoon, all stock trains going east were
stopped, by order of the company's train despatcher, because
of the great snow storm known as "the blizzard."  The
employes of the company unloaded the cattle and put them
in their yard, under cattle sheds, where they remained until
Thursday, when they were reloaded and forwarded to Secau-
cus.  Several calves died in the yard, some in the cars on the
way ; the cows were so badly frozen that eight or nine died
within a week, and others were afterwards sold at a loss.
The snow storm did not extend to East Buffalo, and the
weather during the time the cattle were delayed was not
unusual for that place, ranging from two degrees below zero
on the first night, to ten, sixteen and thirty-four degrees
above zero by Thursday.  The cattle sheds were of the usual
kind, covered, and with sides and an opening on the lanes.
On the next morning after their receipt, they were removed
to the best protected shed in the yard, and four cows, with
calves just born, were put in a horse stable of the company
near the sheds.  All were fed with corn and hay, on request,
and hay was sent with them on the cars.  Feinberg had
shipped cattle on the railroad before from that place, and a
pass was issued at this time to an employe to go with the
cattle.  This person remained with them until they reached
their destination.  On these facts a verdict was found for the
plaintiff, with $2,000 damages.

Argued at February Term, 1890, before BEASLEY, CHIEF
JUSTICE, and Justices SCUDDER, DIXON and REED.

For the plaintiff, *James B. Vredenburgh.*

For the defendant, *Bedle, Muirheid & McGee.*

The opinion of the court was delivered by

SCUDDER, J. In this case the defendant, by its agents, was held out to the public generally as a carrier of goods for hire. This was established by long continued usage to include live stock, as well as inanimate things. The plaintiff had sent cattle by this railroad from the same point several times before and knew their facilities for transportation. On this occasion the only evidence of contract between the parties was a receipt given for payment of freight in advance. There was therefore no limitation by express contract of the common law liability for the transportation of the live stock from the point of acceptance for shipment to the point of delivery designated. There was no provision for delay or other contingencies; nothing said as to a transfer of liability to the plaintiff because of the servant who accompanied the cattle, and rode on a free pass given by the company's freight agent. There can be no doubt that the defendant, on these facts, assumed the common law duty of safely carrying these cattle according to the receipt or bill of lading; and, as a common carrier, it can only be relieved from such duty by the act of God or of the public enemies; or, as others prefer to phrase it, by inevitable accident which human foresight and power can neither anticipate nor control. This is the usual liability, unless some exception can be found. This rule is not applied in its strictness to perishable property and injuries caused by its intrinsic defects; nor is the carrier who undertakes the carriage of live animals answerable for damages caused by the conduct or propensities of the animals themselves. As to these excepted cases the carrier is liable only for want of due care in the transportation. Of the many cases that might be cited as authorities for this rule, with the qualifications above stated, the following only are here given: *Clarke* v. *Rochester and Suspension Bridge R. R. Co.*, 14 *N. Y.* 570; *Smith* v. *New Haven and Norwich R. R. Co.*, 12 *Allen* 531; *Evans* v. *Fitchburg R. R. Co.*, 111 *Mass.* 142; *Maynard* v. *Syracuse R. R. Co.*, 71 *N. Y.* 180; *Myrick* v. *Michigan Central R. R. Co.*, 107

*U. S.* 102; *Georgia R. R. Co.* v. *Spears*, 66 *Ga.* 485; *Michigan Central R. R. Co.* v. *Curtis*, 80 *Ill.* 324.

The court charged the law substantially and correctly as above stated, and submitted the facts to the jury for their application. These show that the heavy snow storm in the East caused the stoppage of the train on which the cattle were loaded. This was undoubtedly the act of God, or inevitable accident not anticipated nor within the control of the railroad company's agent. But the cattle on the cars were not caught and overwhelmed by this violent snow storm; they were still at East Buffalo, and had not started on their journey. The result of the snow storm was that they were delayed, and it was not the proximate cause of the damage sustained. The direct cause of injury was the insufficient shelter given to the cows and calves while detained in the stock yard of the defendant, after they had been taken out of the cars to await the clearing of the storm and the removing of obstructions from the railroad track. Neither the delay nor the cold weather were such that they could be classed as inevitable accidents. Delays are liable to occur by wrecking of trains, washing away of bridges, and other misfortunes incident to the running and maintaining of railroads; and cold weather as great as this is not infrequent in that latitude in the winter and early spring. With these conditions, the agents of the company at their stock yards continued their charge of the cattle and put them where some were frozen and some died. It is said that the company did the best that was possible for them to do, as they had no building but the cattle sheds that could be used for shelter. This is not entirely correct, for there was a large stable for horses, substantially built and covered, belonging to the company, not far away from the sheds. Although this stable was intended to be used only for horses, it was not then required nor occupied for that purpose, and it might, in such an emergency as this, have been made the temporary covering and protection of these tender animals, which were so likely to be injured and killed by exposure. The jury found that the damages were caused by the want of proper care of the

defendant's agent, and not by inevitable accident as the direct cause, and in this finding we think they were right.

It is also objected that the presence of a servant of the plaintiff, who accompanied the cattle, riding on a free pass, exempted the defendant from responsibility, as they were thereby in the plaintiff's care; but there was no contract that the pass given should relieve the defendant from their common law liability to care for the cattle and safely deliver them, and it was correctly charged to the jury, that the mere fact of giving a pass, so that a servant of the owner might go with them to the journey's end, did not relieve the railroad company from responsibility.

The damages, $2,000, although they appear to be large, are not satisfactorily shown to be excessive, and it is only where the jury have certainly erred in the amount that the court should interfere with their verdict for this cause. The rule to show cause will be discharged.