GEORGE A. QUINBY ET AL., APPELLEES, V. UNION PACIFIC RAILROAD COMPANY, APPELLANT.

FILED MARCH 20, 1909. No. 15,598.

1. Trial: INSTRUCTIONS. "An instruction submitting to the jury as an issue of fact a question material to the case, regarding which there is no evidence to support a finding, is erroneous." *Chamberlain Banking House v. Woolsey*, 60 Neb. 516.

2. Carriers: LIABILITY. Q., a shipper, was notified by the agent of the railway company to load his horses promptly at 6 o'clock. Q. agreed with the carrier that, in consideration of free transportation for one person, he would furnish a caretaker to accompany said horses, would load and unload them, and care for the stock

while in the car and yards of the carrier. Immediately after the horses were placed in the car both the shipper and caretaker departed, and said animals were left in the yards of the carrier. An hour later a stranger noticed that the horses were in an excited condition, and were kicking, biting and trampling each other. The evidence did not tend to prove that said condition arose from any cause other than the inherent propensities of the horses and the delay in starting the car on its trip. *Held*, That the carrier was not liable to the shipper for his loss.

APPEAL from the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Affirmed in part, and reversed in part.*

*Edson Rich* and *John A. Sheean,* for appellant.

*John H. Linderman, contra.*

ROOT, J.

Action for damages because of the alleged negligence of defendant. Plaintiffs prevailed, and defendant appeals. The verdict responded separately to two causes of action, and it was not argued at the bar that the verdict was wrong as to the second cause of action, and the judgment to that extent will be affirmed.

Concerning the first cause of action, plaintiffs in December, 1906, owned and desired to ship from Lexington, Nebraska, to Denver, Colorado, 20 valuable draft horses. In order that said horses might be transported with dispatch, plaintiffs waited for a fast freight. Defendant's agent in the afternoon of December 7 notified plaintiffs that they must load the horses by 6 o'clock or the car would not be included in said train. Plaintiffs loaded the horses as directed, and the car remained on the sidetrack opposite the loading chute. In consideration of free transportation to Denver and return for a caretaker, plaintiffs agreed with defendant to load, unload and reload said horses, and to feed, water and tend them in the stock yards and while in the car and on the premises of defendant at plaintiffs' cost and risk, and assumed the

risks arising from the stock being wild, unruly, weak, or in maiming each other or themselves. Immediately after the horses were loaded Mr. Quinby and the caretaker went up town from the railway yards. The caretaker ate his supper, and returned to the depot, and there remained until after 7 o'clock, when he was notified that the horses were injuring each other. About an hour after the horses were loaded a witness, not connected with either party hereto, was attracted to the car, and noticed that one horse was down and the others were "milling," whereupon he went up town to notify Mr. Quinby. Another individual soon thereafter noticed that the horses were stampeded, were pushing, crowding, kicking and biting each other, and some of them were piled up in a heap in one end of the car. Plaintiffs, when notified, refused to do anything for the horses, and a volunteer and defendant's employees opened the car door and unloaded the car. One horse was dead, another died soon thereafter. Two animals were seriously, and others considerably, injured.

The charge of negligence is that the defendant negligently and carelessly left the carload of horses on the side-track for three hours after dark, and then negligently and carelessly operated a train on the main track, and thereby caused said horses to stampede and become injured. Defendant claimed immunity because of the contract aforesaid, because of its alleged lack of negligence, and for the reason that the injuries were occasioned by the natural propensities of the animals. The evidence on the important facts does not conflict. It is undisputed that horses, when loaded into a car, are liable to become nervous and frightened, and, when in that condition, will crowd, kick, bite and push each other and endeavor to get out of the car, and in consequence may "pile up"; that, as soon as the car is propelled by the engine the animals will brace themselves and stand quiet, and thereafter a recurrence of "car fright" is not likely to happen. Witnesses who were experienced ship-

pers testified that horses should not be loaded until the locomotive was ready to take the car out of the yards, although trouble might not happen and horses might remain for more than an hour in the car before it was moved, and not injure themselves or each other. The fast freight did not arrive in Lexington until 7 o'clock on the evening in question. There is some evidence to indicate that one other freight train was then in the yards at that point, but no evidence whatever to show that, while the car loaded with these horses was standing on the siding, any train passed on the main track. There is no evidence to show when the horses were first frightened, but about 7 o'clock, when their plight was discovered, they were steaming with perspiration, and must have been in that excited condition for some time.

Over defendant's objections witnesses were permitted to testify to the probable effect that would result from operating a train on the main track while horses were standing in a car on the side-track, and the court instructed the jury that, if the horses were unnecessarily and negligently left on the side-track near the main line for 1½ hours after dark, and during that time defendant by negligence and carelessness in operating a train on its main track stampeded the horses and caused the injuries to them, plaintiffs should recover. There is not, as we read the record, any evidence whatever that defendant operated any of its trains negligently, or even that a passing train frightened the horses. So far as a deduction of cause from effect may be drawn, the only reasonable inference in the state of the record is that the horses were seized with car fright, induced by their inherent propensities, a condition for which defendant is not responsible. 1 Hutchinson, Carriers (3d ed.), sec. 335; Evans v. Fitchburg R. Co., 111 Mass. 142, 15 Am. Rep. 19.

It is argued that a common carrier of live stock is an insurer, and Nelson v. Chicago, B. & Q. R. Co., 78 Neb. 57, is cited. In that case it was held, upon the facts, that

it was for the jury to say whether a delay in the transportation of fat cattle was unreasonable, and the recovery was not for injuries caused by the propensities of the animals, but for a deterioration resulting from an unnecessary and unreasonable delay in their transportation, something without the control of the shipper, but within that of the carrier.

It is also suggested that the burden was on defendant to show that the injuries resulted from a cause for which it was not liable. This rule might apply if the injuries had occurred while the horses were in course of shipment, but in the case at bar the injuries were not occasioned by the transportation of the stock, nor was the car in any manner defective, nor had it been moved from the exact point where it was loaded. The plaintiffs had agreed to care for the horses while in defendant's yards, and had furnished a caretaker for that purpose. Defendant, unless notified that the caretaker had abandoned the animals, or unless charged with knowledge or notice of such facts as would lead a reasonable person to believe that the caretaker had not been furnished or had abandoned his charge, had a right to rely on plaintiffs caring for the animals while in the car awaiting shipment. 2 Hutchinson, Carriers (3d ed.), sec. 642. Nor is it claimed that the caretaker had abandoned his charge. Had the caretaker been attending to his duty, he might have quieted the animals when they first became restless, or, if he could not do so, he could easily have unloaded them with little effort on his part. It was not a part of the carrier's duty, under the circumstances of this case, to detail an employee to watch the horses and report if they were becoming restless. and the burden was on plaintiffs to show that the injuries resulted from defendant's negligence. *Chicago, B. & Q. R. Co. v. Williams,* 61 Neb. 608; *Chicago, St. P., M. & O. R. Co. v. Schuldt,* 66 Neb. 43.

We conclude that the evidence did not warrant the court submitting to the jury so much of its charge as re-

ferred to the negligent operation of trains on defendant's track, and, for that reason, the judgment must be reversed. *Chamberlain Banking House v. Woolsey,* 60 Neb. 516. Furthermore, we are of opinion that the evidence introduced on the trial of this case is insufficient to sustain a judgment on plaintiffs' first cause of action.

The judgment therefore is reversed as to the first, and affirmed as to the second, cause of action; and each party will pay its own costs in this court.

JUDGMENT ACCORDINGLY.