# Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. Rudy et al.

[No. 21,570. Filed November 23, 1909.]

1. PLEADING.—*Answer.*—*Railroads.*—*Bills of Lading.*—In an action by a railroad company upon a bill of lading, an answer by defendants that they never shipped any property, nor executed any contract of shipment in reference thereto, is sufficient. p. 184.

2. PLEADING.—*Answer.*—*Affirmative.*—*Railroads.*—*Bills of Lading.* —In an action by a railroad company to recover the charges for a certain shipment, overruling a demurrer to defendants' affirmative answer specially denying such shipment or liability, though the facts alleged were provable under the general denial, is harmless. p. 185.

3. PLEADING.—*Answer.*—*Counterclaim.*—A pleading filed by the same party or parties cannot be both an answer and a counterclaim, but where filed by different parties as a several plea for each of them, it may be. p. 186.

4. PLEADING.—*Answer.*—*Counterclaim.*—*How Determined.*—To determine whether a pleading constitutes an answer or a counter-

claim, the courts will look to the facts alleged and the relief sought, and not to the name given thereto by the pleader.   p. 186.

5.   PLEADING.— Answer.— Counterclaim.— Combination of.— Railroads.—Breach of Duty in Shipments.—A pleading by three defendants alleging that two of them had no interest in the property shipped and did not execute the contract for shipment sued upon, that the other defendant owned the property, and that the plaintiff so negligently carried such property that it was damaged to a certain amount, and demanding judgment for costs for the former two and for damages for the latter, constitutes an answer for such two, and a counterclaim for the other.   p. 186.

6.   RAILROADS.—Bills of Lading.—Provisions for Filing Claims for Damages.—Waiver.—Counterclaim.—In an action by a railroad company against a shipper, for the recovery of freight charges, a counterclaim alleging that such company negligently injured the property shipped, to his damage in a certain sum, and that defendant had filed an unverified claim therefor at the time of the delivery of the property, but defendant refused to settle for the damage until the payment of the freight, is sufficient, where the bill of lading sued upon provided that all claims for damages to the goods must be verified and filed within five days after delivery. p. 187.

7.   RAILROADS.—Freight Charges.—Counterclaims for Damages.—An action by a railroad company for freight earned upon a shipping contract, is wholly independent of a claim by the shipper for damages to the freight shipped, both being for a breach of contract. p. 187.

8.   RAILROADS.—Bills of Lading.—Provisions.—Waiver.—The refusal to pay a claim for damages to freight until the transportation charges were paid is a waiver of the right to insist upon a forfeiture because of the shipper's failure to file a verified claim for damages within five days, as provided in the bill of lading. p. 188.

9.   TRIAL.—Verdict.—Disclaimer.—Motions to Reject.—Where a verdict was returned in favor of three defendants for certain damages to which one alone was entitled, the overruling of a motion to reject a disclaimer filed by the other two, is not reversible error.   p. 188.

10.   TRIAL.— Verdict.— How Construed.— Several Defendants.— A verdict apparently in favor of three counterclaimants, when but one thereof had any interest therein, as shown by the counterclaim, will be construed as in favor of the real party in interest alone.   p. 188.

11.   TRIAL.—Instructions.—How Considered When Evidence Not in Record.—In the absence of the evidence, the giving of a questioned

Cleveland, etc., R. Co. *v.* Rudy—173 Ind. 181.

instruction will be held erroneous, if such instruction was improper under all conceivable states of the evidence admissible under the issues. pp. 189, 190.

12. TRIAL.—*Instructions.—Misleading.*—An instruction which is liable to mislead the jury should not be given. p. 189.

13. TRIAL.—*Instructions.—Railroads.— Liability for Freight.—* An instruction that defendant railroad company is an insurer of the property it undertakes to transport, except as to acts of God, and the public enemy, is incorrect and misleading. p. 190.

14. RAILROADS.—*Shipping Stock.—Liability.—*A railroad company in transporting stock is not, in the absence of negligence, liable for injuries inflicted by one animal upon another. p. 190.

15. RAILROADS.—*Shipping Perishable Goods.— Liability.—* A railroad company, itself without fault, is not liable for the natural changes occurring during transit to perishable goods. p. 190.

16. TRIAL.—*Instructions.—Erroneous.—Railroads.—Shipping Stock. —Liability.—*An instruction that defendant railroad company is liable as an insurer for certain animals shipped over its road, is prejudicial, where one claim for damage was the chewing off of the manes and tails of some of the horses by the others, such company not being liable for such damage. p. 191.

17. TRIAL.— *Instructions.— Railroads.— Injuring Stock Shipped.— Damages.—Measure of.—*An instruction that the shipper's damage for injuries to stock shipped is the difference in value at the destination of the stock as it should have been delivered, and as it was delivered, when considered with another instruction that if the jury found an amount due to the company for freight, and an amount due to the shipper for damages, they should deduct the one from the other, giving a verdict to the party entitled to the excess, is not misleading. p. 191.

From Delaware Circuit Court; *Joseph G. Leffler,* Judge.

Action by the Cleveland, Cincinnati, Chicago and St. Louis Railway Company against Clayton H. Rudy and others. From a judgment for defendants, plaintiff appeals. Transferred from Appellate Court under §1394 Burns 1908, subd. 2, Acts 1901, p. 565, §10. *Reversed.*

*Thompson & Thompson,* for appellant.
*Bingham & Long,* for appellees.

HADLEY, C. J.—Appellee Clayton H. Rudy, by special contract in writing, contracted with the Oregon Short Line Rail-

way for the transportation of a carload of horses from Lima, Montana, to Peoria, Illinois, and with the appellant, by a like contract, for the transportation of the same horses from Peoria, Illinois, to Yorktown, Indiana, and this action was brought by appellant against all of the appellees, on the contract made, to recover the freight charges. There was a general denial to the complaint by each of the defendants. Each also filed two paragraphs of what are denominated answer and counterclaim, which were challenged by demurrer. The demurrer being overruled, both an answer to the pleading as a counterclaim and a reply to it as an answer were filed, the cause was submitted to a jury for trial, and a general verdict returned in favor of "all the counterclaimants," assessing their damages at $650. Appellant filed a motion for a new trial, and pending this motion the appellees Montezuma and Parker F. Rudy filed what is called a disclaimer, in which they disclaimed any interest in the subject-matter of the controversy, and consented to the rendition of judgment upon the verdict in favor of appellee Clayton H. Rudy. Appellant moved to strike out and reject this disclaimer, which motion was overruled. Appellant's motion for a new trial was then overruled, and judgment was rendered on the verdict, without further objection or exception from appellant, in favor of the appellee Clayton H. Rudy.

Among the many questions presented by the record and discussed by appellant in its brief, is the question of the sufficiency of the second and third paragraphs of the answer and the counterclaim. These pleadings in form are truly exceptional. The introductory part of each paragraph—and they are substantially alike in all their allegations—is as follows: "The defendants each for himself for a [second or third] paragraph of answer to plaintiff's amended complaint, and by way of counterclaim alleges: [Then follows a statement of the facts constituting the grounds of counterclaim and answer.] Wherefore, de-

fendant Clayton H. Rudy prays the court for damages in the sum of $2,000, and that an amount of damages equal to any amount found due plaintiff on account of the claim sued on be recouped against the same, and that said defendant have judgment for costs and for the damages he has sustained in excess thereof, and defendants each pray judgment for costs and all other proper relief.''

No facts are averred in either paragraph of counterclaim showing any right of action whatever in favor of either Montezuma or Parker F. Rudy. Both paragaphs allege that Clayton H. Rudy was the sole owner and shipper of the horses, and his claim to recover damages is predicated upon the injury to the animals in transportation, through the negligence of appellant in discharging its duty as a common carrier in respect thereto. But while the facts pleaded show no grounds of counterclaim in favor of Montezuma and Parker F. Rudy, they do state facts which constitute a complete defense to appellant's complaint against them severally. The facts stated in these paragraphs of the pleading show that they neither shipped nor owned the horses transported by appellant, and were not in anywise bound to appellant by contract, express or implied, for the freight thereon. These facts could have been proved under the answer of general denial, but that circumstance would not affect the question of the correctness of the ruling of the court on the demurrer to these paragraphs of the answer, if it can be treated as a separate answer of these two parties.

The pleadings are attacked by appellant upon the ground that they are the joint counterclaims of all three of the defendants, and that as neither paragraph states a cause of action in favor of Montezuma or Parker F. Rudy they are bad, and if the premise that they are joint counterclaims is correct, there was manifest error in overruling the demurrer to them.

The law is so well settled in this State that a pleading filed

by a party to a suit cannot be made to perform the double office of an answer and a counterclaim, that we do not deem it necessary to cite the cases holding this to be the law. It is also the settled rule that the court will determine the character of a pleading, whether it is an answer or a counterclaim, not by what the pleader calls it, but by the facts which it contains and the character of relief sought. The first rule has always been applied to a pleading filed by the same party or parties, and not where it is filed by different parties as a several plea for each of them.

This pleading is a judicial novelty, in that while it purports to present but one statement of facts, these facts are pleaded by each defendant severally and ostensibly for himself, but for no other apparent purpose than to strengthen the claim of Clayton H. Rudy, and show the nonliability for costs of Montezuma and Parker F. Rudy. It is alleged that the horses were the property of Clayton H. Rudy, shipped by and for him, and accompanied by Montezuma, and that all notices, demands and agreements, that arose and became necessary during the transit, were made by Montezuma for and on behalf of Clayton H. Rudy; that the damages to the horses, resulting from the negligence complained of, accrued to Clayton H. Rudy, and the general prayer is that he have judgment for the sum found due him as damages, and the other two have judgment for costs and all proper relief. This form of pleading should not be permitted by the trial court, but its analysis unmistakably shows that, in substance and effect, it is the counterclaim of Clayton H. Rudy, and the argumentative answer in denial of the other two, and, while offensive to every recognized rule of pleading, does not afford a sufficient reason for a reversal of the judgment.

The counterclaim is also attacked as the separate counterclaim of Clayton H. Rudy, in that it reveals that his rights

are based upon a contract which, as affirmatively shown, he has failed to comply with in these respects:

In that he failed to pay the freight charges on the horses claimed to have been injured in the transportation, and in that he failed to file his verified claim, in writing, with the appellant's freight claim agent, at his office in Cincinnati, within five days from the time the horses were delivered to him, as required by the terms of the contract set forth in the counterclaim.

Appellee Clayton H. Rudy's right of action, set up in his counterclaim for damages done his property through the failure of appellant to perform its obligation as a common carrier, did not in anywise depend, as a condition precedent, on his payment of the freight charges. The right of appellant to sue for the freight, and the right of said appellee to sue for his damages, were independent of each other. Appellant would have no more right to insist that said appellee should pay the freight before he could maintain an action for damages done to his property in carriage than said appellee could insist that appellant pay the damages to the property before it could maintain an action for the freight. The suits would, in each case, be brought, not for the enforcement of the contract, but for its breach.

The condition in the contract set up in the counterclaim—that a verified written claim for damages should be filed with appellant's agent within five days from the date of the removal of the stock from the cars—was a valid condition precedent to said appellee's right to maintain an action for the damages, and a compliance with the condition or its waiver must be shown in the plea. It is averred, however, in the counterclaim, that on the day on which the horses were unloaded from the car appellee Clayton H. Rudy filed his claim with the appellant's agent at Yorktown for the damages sustained by him on account of

the injuries to said stock in shipment, through the alleged negligence of the appellant, and that said claim was, within twenty-four hours transmitted by said agent to appellant's claim agent at Cincinnati; that said agent advised appellee Clayton H. Rudy that it would not settle said claim or consider it until the freight charges were paid, and made no other objection to the claim. This was a waiver by appellant of the right to insist upon the filing of the verified claim with the Cincinnati agent.

The placing of appellant's delay or refusal to pay the claim upon grounds other than the unperformed condition with respect to the filing and verification of the claim, 8. was, in legal effect, a relinquishment of its right to claim a forfeiture for noncompliance. *Cleveland, etc., Co. v. Heath* (1899), 22 Ind. App. 47; 4 Elliott, Railroads (2d ed.), §1514; 5 Thompson, Negligence (2d ed.), §6515. The counterclaim was not, on this account, bad. We think it was good as the separate counterclaim of appellee Clayton H. Rudy.

The action of the court in overruling appellant's motion to reject the alleged disclaimer of Montezuma and Parker F. Rudy is urged as a reversible error. We think 9. the ruling was quite proper. The verdict made by the jury was "for all the counterclaimants for $650," when there was no averment, prayer or shadow of evidence warranting it. If the verdict should be construed as 10. a verdict in favor of all three of the parties; then the appellant's motion for a new trial should have been sustained, as the verdict would clearly be contrary to law, and that was one of the reasons assigned in appellant's motion for a new trial. As before stated, there was no pleading of either Montezuma or Parker F. Rudy in the case, that authorized a verdict in their favor for damages. Neither of them asked for such a verdict in any pleading filed, and a verdict in their favor for damages was contrary to law. They might, if the evidence justified it, have

been entitled to a general verdict in their favor, but not for damages. As we construe these pleadings, however, there was but one counterclaim and one counterclaimant, and that was Clayton H. Rudy. The verdict in favor of "the counterclaimants" will be construed to be a verdict in his favor; and a judgment in his favor, on such verdict, properly follows the verdict.

It is insisted that error was committed in the giving of instruction fifteen, of the court's own motion, which instruction is in these words: "Railroad companies that undertake to carry freight for hire are insurers of the property they engage to transport under the common law, and in the absence of any valid or binding stipulations in the contract of carriage limiting such common-law liability, they are only exempt from liability for damages to property occurring through the act of God or the public enemy."

With respect to this charge, by stating the proposition in a more condensed form, the jury, in effect, was instructed that, in the absence of a valid contract limiting its liability, the railroad company was an insurer of the safe delivery of the animals to the consignee, and was liable for all damage that accrued to them in the transportation, that was not caused by the act of God or the public enemy.

The evidence is not in the record, and the giving of this charge to the jury must be held erroneous, if it was improper under all conceivable states of the evidence

11. admissible under the issues. *Wenning* v. *Teeple* (1896), 144 Ind. 189, 194; *Rapp* v. *Kester* (1890), 125 Ind. 79, 82; *Murray* v. *Fry* (1855), 6 Ind. 371, 373.

The rule in such cases is, that if an instruction,

12. within itself, is radically wrong, and liable to direct the minds of the jury to an improper basis for its verdict, it should be condemned.

Under the rule, we think this instruction is too narrow, and, consequently, misleading. The rigor of the common

law, in holding a common carrier of property as an insurer of the safe delivery of the goods, except as to damage from the act of God or the public enemy, has been relaxed in this State and most of the American states, more especially as applied to the carriage of live stock.

Broadly stated, it may now be said to be firmly established in this country that when more than one animal is shipped in the same carriage, the carrier, in the absence of negligence, it not liable for injuries inflicted by the animals upon each other in the exercise of their natural habits and propensities. The doctrine rests upon the same principle that exempts the carrier of fresh meats, vegetables and other perishable property from liability for the tainting, rotting and deteriorating of the property during the carriage, from some natural, inherent quality, and without fault on the part of the carrier. 4 Elliott, Railroads (2d ed.), §1546, and cases collected in note; 1 Hutchinson, Carriers (3d ed.), §334; Moore, Carriers, 496; 5 Thompson, Negligence (2d ed.), §6471; *Quinby* v. *Union Pac. R. Co.* (1909), 83 Neb. 777, 120 N. W. 453; *Foust* v. *Lee* (1909), 138 Mo. App. 722, 119 S. W. 505; *Lewis* v. *Pennsylvania R. Co.* (1903), 70 N. J. L. 132, 56 Atl. 128; *Evans* v. *Fitchburg R. Co.* (1872), 111 Mass. 142, 15 Am. Rep. 19. Charge fifteen overlooks this principle.

It is not proper to say that a carrier can, by special contract, free himself from a liability that does not and cannot under the law exist. Neither can a special contract, limiting legal liability, in any sense create a liability where none exists without such contract. If then in the transportation of animals there is no liability in the faultless carrier, for self-inflicted damage, instruction fifteen, which is equivalent to a charge that he is liable for all damage, not caused by the act of God or the public enemy, accruing in the shipment, authorizes a recovery for an injury in the shipment for which the carrier is not liable,

and it is clearly erroneous under any possible state of legitimate evidence.

Appellee Clayton H. Rudy's counterclaim shows that, for a reduced tariff and free transportation for an attendant, he agreed, in the shipping contract, to feed, water and care for the animals in transit at his own risk and expense, and assumed all risk of damages which the animals might inflict upon themselves. The counterclaim also shows that one element of damage sued for was that which resulted from the chewing off of the manes and tails of some of the horses by the others—a damage imposed by the natural propensity of the animals, and one that probably might have been prevented by a watchful caretaker. So it is plain that the effect of charge fifteen might have had an important influence upon the verdict, and also have enabled said appellee to recover for his own breach of contract.

The giving of instruction seventeen is also complained of. It reads as follows: ''The measure of the damage of the owner and shipper of the horses in controversy, if you shall find that the horses were damaged by the alleged negligence of the plaintiff, is the difference in the value of said horses at Yorktown, Indiana, less any necessary depreciation in value that would ordinarily result from their transportation by freight-train under the conditions then existing at the time they were received by plaintiff for shipment, from Peoria, Illinois, to said Yorktown, and their value at said Yorktown at the time they were delivered.'' In relation to this charge, it will be observed that it does not purport to go further than to state the measure of the counterclaimant's damage, if any, and in this we think it is substantially correct. The nineteenth charge, given by the court, in effect directed the jury that if it found some amount due to the plaintiff railroad company on its claim for freight, and some amount due the counterclaimant as damages to the horses, it should deduct the smaller amount from the larger and return a verdict for the excess

in favor of the party appearing to be entitled to it. Standing alone as a general instruction on the measure of damages, instruction seventeen would be incomplete, for omitting to direct a charge of the freight against the shipper. (*Wallace* v. *Vigus* [1836], 4 Blackf. 260; *Michigan, etc., Co.* v. *Caster* [1859], 13 Ind. 164; 3 Sutherland, Damages [2d ed.], §918; 6 Cyc., 525); but considered in connection with instruction nineteen we see no grounds for the claim that the jury was misled.

For error of the court in giving to the jury instruction fifteen, the appeal must be sustained. Judgment reversed and cause remanded, with instructions to grant appellant a new trial.