## WILLIAM STONE v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY CO.

**Injury to live stock:** PRESUMPTION AS TO CONDITION: EVIDENCE. Where live stock is shown to have been in good condition at the time it was delivered to a railway company for transportation, a presumption of good condition will continue until overcome by competent evidence; but proof simply of bad condition of the stock at a place remote from the railway at the terminal point, and several hours subsequent to its arrival will not overcome this presumption; especially where it appeared that the stock was handled in the meantime by persons not connected with the railway company.

**Same:** NEGLIGENCE: INSTRUCTIONS. Where the only negligence alleged in an action for injury to live stock was in furnishing plaintiff a defective car for its shipment, the plaintiff should be confined in his proof to such negligence; and the instruction to the effect that if the stock was in good condition when received by the carrier and was injured upon its delivery a presumption that the injury was the result of the carrier's negligence, and casting the burden upon the carrier to prove that care on its part would not have prevented the injury was erroneous, because not limiting the negligence to that charged in the petition.

**Same:** EVIDENCE. Where, as in this action for injury to live stock while in transit, the only negligence alleged was the furnishing of a defective car, and a witness for defendant had testified that he had inspected the car and found it in good condition, his evidence as an expert concerning the suitableness of the car for carrying live stock was wholly immaterial.

*Appeal from Van Buren District Court.*—HON. M. A. ROBERTS, Judge.

TUESDAY, NOVEMBER 15, 1910.

ACTION to recover damages for injuries to horses shipped by plaintiff from Ottumwa to East St. Louis over the

lines of defendant road and connecting carrier. There was a verdict for the plaintiff, and from judgment on such verdict the defendant appeals.—*Reversed.*

*Carroll Wright, J. L. Parrish, J. H. Johnson,* and *Robert Sloan,* for appellant.

*Walker & McBeth,* for appellee.

McClain, J.—The only ground of recovery alleged in plaintiff's petition was the negligence of defendant in providing a defective car in which the horses were shipped, and it was alleged that six or seven head of horses shipped in said car were scratched, cut, and bruised, and in a bad, damaged, and unsalable condition and not marketable when the car arrived at its destination at East St. Louis. There was a conflict in the evidence as to the condition of the car in which the horses were shipped, and there · was evidence that, when the horses were examined in the sale barn of the consignee's agent, the McFarlane Commission Company, at East St. Louis, some of them were found to have sustained injuries such as might have been the result of transportation in a defective car as described by plaintiff's witnesses.

I. The sufficiency of the evidence to support the verdict is questioned on the ground that it does not tend to show the condition of the horses when they were unloaded from the car at the stockyards in East St. Louis. The car left Ottumwa on the 12th of June, and was transferred at Keokuk to the connecting carrier during the forenoon of the next day. It does not appear from the evidence when the train of the connecting carrier containing this car left Keokuk, or when it arrived at East St. Louis. About 9 o'clock on the morning of the 14th, the plaintiff and one Hawkens, who was associated with the McFarlane

1. Injury to Live Stock: presumption as to condition: evidence.

Commission Company, examined the horses in the commission company's barn and found several of them injured in various ways.    It also appears without conflict in the evidence that the horses were in good condition when placed in the car at Ottumwa.    From this proof of good condition at the time of shipment, the presumption would arise that such condition continued until a different condition was shown to have existed; or, to speak more accurately, the presumption would obtain until some evidence was introduced tending to overcome it by showing that the horses were not in the condition in which they were shipped. *Powers v. Chicago, R. I. & P. R. Co.*, 130 Iowa, 615; *Beard v. Illinois Cent. R. Co.*, 79 Iowa, 518.    This is the presumption as against a connecting carrier, and we see no reason why such presumption should not apply as against the shipper or consignee who claims that animals shipped over lines of connecting carriers reached their destination in bad condition.

Now, the only evidence that these horses reached their destination in bad condition, if there was any such evidence, must be found in the testimony of the plaintiff and Hawkens that the horses were in bad condition when they were examined in the barn of the McFarlane Commission Company.    It is conceded that the horses must have been unloaded from the car in which they were shipped into the yards of a stockyards company, and taken by some one from those yards to the stable where they were examined, distant about a quarter of a mile from the stockyards.    It is not contended that there was any connection between the railroad company and the stockyards company, nor that there was any obligation on the part of the railroad company to deliver the horses into the stable of the McFarlane Commission Company, which was either the consignee or the agent of the consignee for the receipt of the horses. There was no evidence that, when the horses were unloaded from the car in which they were transported into the yards

of the stockyards company, they were in bad condition, and, while the nature of the injuries to the horses was such as to make such injuries consistent with the receipt of such injuries in a defective car, it was also consistent with negligence and mistreatment at the hands of the stockyards company or during the transfer from the stockyards to the barn. Proof of the condition of the horses in the barn at a place a quarter of a mile removed from the place of delivery by the railroad company, and at a time which may have been at least several hours subsequent to such delivery, would not give rise to any presumption that, at the time the horses were unloaded from the car, they were in such damaged condition. No authority is cited for entertaining the presumption that, when the horses were unloaded from the car, they were in the condition in which they were subsequently found; it appearing that in the meantime they would necessarily be handled by persons for whose negligence and misconduct the defendant was in no way liable, and that their bad condition was as reasonably attributable to such misconduct or negligence as to the alleged negligence of the railroad company in transporting the horses in a car which was defective. If this suit were against the stockyards company, the presumption that the horses were unloaded in good condition would certainly be stronger than any presumption arising from evidence of bad condition when examined in the barn of the McFarlane Commission Company. It seems to us there was no evidence whatever connecting the condition of the horses when they were examined in the barn with the negligence of the railroad company in transporting them in a defective car, and the motion of the defendant to direct a verdict in its favor for lack of sufficient evidence should have been sustained.

II. The sole ground of recovery alleged in plaintiff's petition was the negligence of the defendant in furnishing a defective car for the transportation of plaintiff's horses.

Whatever ground of recovery plaintiff may have had, he was required in view of the pleadings to confine his evidence to the particular negligence alleged. *Volquardsen v. Iowa Telephone Co.*, 148 Iowa, 77, and cases there cited. And the court in effect so instructed the jury. But the court also instructed the jury as to the general liability of a carrier of live stock, and then gave the following instruction: "If the evidence satisfies your minds by the weight or preponderance thereof that the horses in question were received by the defendant company at Ottumwa, Iowa, in good condition, for shipment to East St. Louis, Ill., and that when delivered to the consignee at East St. Louis they were injured, then the law presumes they were injured by reason of the negligence or carelessness of the defendant's agents and employees or those of some company through whose hands or over whose lines they passed while in transit, and the burden of proof is on the defendant to prove by the weight or preponderance of the evidence that care and skill on their part would not have prevented the injury." This instruction we think should not have been given, in view of the issue in the case already stated, under which no recovery could be had by plaintiff without proof of specific negligence in furnishing a defective car and injury to the horses as a result of such negligence. The negligence referred to in the instruction above quoted is not limited to negligence in furnishing a defective car, but covers any negligence or carelessness of defendant's agents or employees or those of the connecting carrier over whose line of road the car was carried to its destination, and the burden was cast upon the defendant to prove not only that the car was not defective, but also that in no other respect were the agents and employees of the defendant and the connecting carrier guilty of any negligence or want of skill in transportation and unloading of the horses. This instruction cast upon defendant a greater burden than

2. SAME: negligence: instructions.

it was required to meet under the issues in the case. It did introduce evidence tending to show that the car was not defective, and that the injury to the horses could not have resulted from the condition of the car; but the jury might well have found, under the instruction, that the defendant had failed to establish absence of negligence in other respects. Under the issues the instruction was plainly erroneous.

III. With respect to the suitableness of the car for the transportation of horses, a witness for defendant, who had testified that he had had several years' experience as a car repairer, and that he had inspected the car in question on the day on which it was loaded, was asked whether or not he was familiar with what is a reasonably safe car for transporting horses, and on objection for plaintiff he was not allowed to answer. He was then asked whether from his experience and examination of such car he could say whether such car was a reasonably safe car in which to transport horses from Ottumwa to East St. Louis, and an objection for plaintiff to this question was also sustained. It is contended for appellant that these rulings were erroneous, and the case of *Betts v. Chicago, R. I. & P. R. Co.,* 92 Iowa, 343, is relied upon to sustain this contention. If the purpose of the counsel for defendant was to show that the general character and construction of the car was such as to make it a suitable car in which to transport horses, the answers would have been immaterial, for there was no contention on behalf of plaintiff that the car was not in its general nature and construction a suitable one for that purpose. The negligence alleged was in furnishing a defective car; that is, a car "with the sides and boards thereof broken, nails and sharp splinters and ends of boards protruding, and said car was in a general dilapidated and bad condition." If the purpose was to have the witness testify that the car was not specifically defective in these respects, then

there was no occasion for him to give a general opinion about the condition of the car, for he had already testified directly that he had examined the car on that date and found it in good condition without boards broken, and there was no evidence of any boards having been broken; that "there were not any doors gone, and all the pins with which to fasten the doors were there and the two cattle bars were in the car. . . . There were no slivers or pieces of boards broken or protruding in any manner." Having expressly negatived any defective condition whatever, it was wholly immaterial that he should give his expert opinion as to the suitableness of the car for the carrying of horses. In this respect there was no error.

For the reasons pointed out in the first two divisions of this opinion, the judgment is *reversed*.