CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILROAD
COMPANY *v.* BLANKENSHIP.

[No. 10,300. Filed April 23, 1920. Rehearing denied November 19, 1920. Transfer denied December 22, 1921.]

1. EVIDENCE.—*Admissibility.—Hearsay.—Death of Live Stock.— Testimony as to Statements by Veterinarians as to Cause of Death.*—In an action against a carrier for the death of stock by disease after reaching destination, plaintiff could testify to statements of veterinarians as to the nature of the disease from which the stock died. p. 231.

2. CARRIERS.—*Carriage of Live Stock.—Death 'from Disease after Reaching Destination.—Action for Damages.—Burden of Proof.*—In a shipper's action against a carrier for damages for stock alleged to have died from pneumonia after delivery at destination because of defendant's negligence, *held* that plaintiff had the burden of showing the kind of sickness causing the death of the stock. p. 232.

3. CARRIERS.—*Carriage of Live Stock.—Death from Disease after Reaching Destination.—Negligence.—Evidence.—Sufficiency.*—In an action against a carrier to recover for the death of live stock from disease after reaching destination, evidence *held* to show that the sickness was the result of defendant's negligence. p. 233.

4. CARRIERS.—*Carriage of Live Stock.—Bill of Lading.—Provision for Filing Claims for Damages.*—A provision in a bill of lading that a shipper of live stock shall make out and file a verified and detailed statement of any claim against the carrier, and the reason therefor, within five days from the delivery of the stock at destination, is valid. p. 234.

VOL. 77—15

5.  CARRIERS.—*Carriage of Live Stock.—Disease Developing after Arrival at Destination.—Notice to Carrier.—Reasonable Time.* —Where pneumonia in a shipment of live stock did not develop until three days after their delivery at destination, the shipper had a reasonable excuse for not presenting his claim for damages within five days as required by the bill of lading, but such condition did not relieve the shipper entirely from giving notice or presenting a claim within a reasonable time, and a failure to give notice or to present a claim for seventy-five days was a violation of the contract of shipment, as the carrier should have had an opportunity to investigate as to its liability within a reasonable time and while the cattle were sick.  p. 234.

From Morgan Circuit Court; *Nathan A. Whitaker,* Judge.

Action by Quincy A. Blankenship against the Chicago, Indianapolis and Louisville Railway Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*McNutt & McNutt, Perry McCart* and *C. C. Hine,* for appellant.

*S. C. Kivett, Willis Hickam, Sr., Hubert Hickam* and *Willis Hickam, Jr.,* for appellee.

NICHOLS, C. J.—The complaint in this action is in substance as follows:    December 17, 1913, appellee purchased 173 head of calves and yearling cattle, and shipped the same in four cars over appellant's main line of railroad from the city of Chicago to the town of Gosport, Indiana.    Said stock was shipped under a contract made a part of the complaint.    When loaded it was free from disease and in good condition and properly loaded upon cars in time for shipment on the evening of said day, and was due to arrive in regular course of shipment at 6 o'clock a.m. the next morning thereafter, and if it had been diligently and promptly shipped without unnecessary delay, the same would have arrived at Gosport safe and in good condition within a period

of ten hours after it was loaded for shipment. If said stock had been promptly shipped it would not have been necessary to have it watered or fed or unloaded during said journey, and it was therefore unnecessary to have any attendant to accompany said stock and to feed, water and care for it. At the time said stock was so loaded the weather was cold, stormy and windy, and because of the tender age of such stock, it was necessary in order to transfer the same safely, and to prevent damage and disease, that it be shipped promptly and without unnecessary delay or exposure. If said stock had been so diligently transferred it would have arrived safe at destination in good condition and free from disease. Appellant, knowing said conditions, carelessly and negligently allowed said stock during said journey to stand upon its tracks confined in cars, without food and water and unprotected from the cold and windy weather for a period of more than twelve hours; that it thereby contracted disease known as pneumonia and twenty-three head died, and others were sick and greatly reduced in flesh and damaged as a result thereof. When said stock reached Gosport, it was immediately unloaded by appellee and taken to his farm two or three miles distant, where for several weeks such animals were sick and afflicted with said disease; appellee incurred veterinary expenses made necessary by reason of such sickness in the sum of $300, and was damaged in the total sum of $2,500. The said stock did not arrive until twenty-four hours after it was due; appellee immediately unloaded it and drove it to his farm before he discovered that it had contracted such disease, and it was many weeks thereafter before he could ascertain the damage and injury resulting thereto. As soon as he did ascertain the extent of such injury and damage he promptly notified appellant thereof, and demanded said damages which appellant refused to pay. The

contract which is made a part of the complaint provides, *inter alia*, that appellee does not agree to carry said stock in any particular train or within any particular time, or any particular hour, and that there shall be no liability on account of delay caused by storm, failure of locomotive, cars or obstructions on the track. It further provides that when and before the aforesaid stock is removed from the place of destination, if the shipper intends to make any claim against the railroad company on account of delay in its transportation and any injury thereto, or any loss thereof, he shall give written notice thereof to the nearest agent or representative of the railroad company and allow such agent or representative to examine said stock in the interest of said railroad company before removal of the same. In the event that a claim is to be made, the shipper shall make out and file with the railroad company a verified and detailed statement of such claim and the reason therefor within five days from date of delivery of such stock to destination, such claim to be sent to the freight claim agent, Transportation Bldg., Chicago, Illinois. It further provides that the railroad company shall not be liable for any damage to such stock or loss thereof, or injury thereto, or any delay in the movement thereof, unless the claim is filed with it as therein provided, and that no suit shall be brought in any case unless brought within six months next after the cause of action accrues.

The appellant answered in general denial, and the cause was submitted to a jury for trial. At the conclusion of the evidence, and after both parties had rested, appellant filed its motion that the court instruct the jury to return a verdict for appellant, which was overruled. After motion for a new trial which was overruled, judgment was rendered on the verdict for $1,600 in favor of appellee. Appellant assigns as error

in this court the trial court's action in overruling appellant's motion for a new trial, and under the assignment contends, first, that the verdict of the jury is not supported by sufficient evidence, and that it is contrary to law.   Appellee says that "According to the weight of authority, where it is shown as in this case, that the live stock was   *   *   *   sound and free from disease when delivered to the carrier and loaded in good condition, and that it was delivered at its destination 36 hours later, after more than 26 hours unusual delay, during mid-winter, in cold and inclement weather, the stock not having been fed or watered, or unloaded for rest during the journey, and where the cattle when unloaded, were chilled, cold and stiff, with the hair ruffled, and were unable to travel freely, and when after the best of care and protection after delivered, they were stricken with disease, within two or three days *   *   *   from which 23 of them died within six weeks, and most of the balance were likewise afflicted, and where the evidence shows that the State veterinarian and a local veterinarian treated them for pneumonia, the jury were justified in concluding that their illness was properly called pneumonia, and that it resulted from negligent delay and exposure during shipment." As these are the facts as stated by appellee upon which he bases his right of recovery, it is expedient that we examine them in the light of the evidence, which, because of the disagreement of counsel as to what it contains, we have examined with some degree of care.   As appears from the evidence of trainmen and dispatchers, refreshing their recollection from train sheets, the four cars carrying the live stock involved left the chute at the Union Stock Yards, Chicago, at 8:20, and were then delayed thirty-five minutes by a Pennsylvania engine; they arriving at South Hammond, Indiana, at 10:35 p.m.; they did not leave South Hammond until 5:50

a.m., December 18, 1913, because of a derailment at Cedar Lake. They arrived at Lafayette at 4:10 p.m. and left there at 5:10 p.m. arriving at Gosport Junction at 10:40, and at Gosport at 11:25 that night, where the stock was unloaded, and delivered to appellee. Appellee says that the train arrived between three and four o'clock the next morning. The cars had been transferred at South Hammond, Lafayette, and Gosport Junction, and had been hauled about 200 miles. There is no evidence of any unusual delay, except the seven hours and forty minutes delay at South Hammond, on account of the derailment at Cedar Lake. Accepting appellee's testimony, instead of the trainmen and dispatcher, testifying from their records, there would be an additional loss of time of between four and five hours.

Appellee's witness, Henry J. Cox, professor of meteorology in charge of the United States Weather Bureau, with headquarters in Chicago, testified as to the cold and inclement weather, from which testimony we learn that in Chicago, on December 17, 1913, the highest temperature was forty degrees and the lowest thirty-four degrees above zero; on December 18, the highest temperature was thirty-nine degrees, and the lowest twenty-nine degrees above zero. At Kokomo, Indiana, on December 17, the highest temperature was forty-four degrees, and the lowest was forty-one degrees above zero, and on December 18, the highest temperature was thirty-nine degrees and the lowest twenty-three degrees above zero. At Worthington, Indiana, on December 17, the highest temperature was forty-nine degrees, and the lowest was thirty-nine degrees above zero, on December 18, the highest temperature was forty-six degrees and the lowest twenty-six degrees above zero. Between Gosport and Chicago, and covering the entire Northern and Central portions of Indiana, and the territory in the vicinity of Chicago, the weather

was mild for the season of the year, with moderate temperature, and light to moderate winds with no storm conditions.   There was no blizzard.   The weather was considered above the average for those days.   From this testimony, it is clear that there was no substantial variation in temperature, while the stock was delayed at South Hammond, and no extreme weather at any time during the transportation period.   Now as to the statement that the cattle when unloaded, were chilled, cold and stiff, with the hair ruffled, and were unable to travel freely, and when after the best of care and protection after delivered, they were stricken with disease within two or three days—appellee's testimony stated in narrative form was that within five minutes after the cattle were unloaded they had them on the road to appellee's farm.   He had no notice at that time as to whether any of them were sick or otherwise.   He first learned that there was something wrong with them in about three days, when he observed that a fine Durham bull calf was off, and he examined him closely and never had a brute like him before, and immediately went to work to find out what was the matter with him.   He died the next day, and the next day after that five or six more of them were sick in the same way.   He lost twenty-three head in all.   On cross-examination, he said they only had them on the road home about two hours, as it was but four and a half miles.   They drove along all right, though some of them were tired.   None of them tried to lie down.   The next morning at nine o'clock, he observed nothing wrong with them, or that day, or the next.   None of the cattle were sick the day he got them home.   It was a nice day when they arrived at Gosport, nice enough that men lay down and

1.    slept on the ground.   Any statements of appellee as to what the veterinarians had said as to the nature of the disease should have been excluded.   It ap-

pears that one of the veterinarians was in the court room, but he was not called. The jury should have heard from him as to the ailment.

Appellant contends that while it is the rule of law that where stock is received by the carrier in good condition, and delivered at its destination in an *in-*

2. *jured condition,* this is proof that the injury occurred while the stock was in the carrier's possession, and there is a presumption of negligence, yet this is not the rule as to live stock delivered to the carrier in good condition, and delivered at its destination in sick or *diseased condition;* that in such case there is no presumption of negligence, and the burden is on the shipper to prove that the disease or sick condition is the result of the carrier's negligence.   Appellee insists that the rule is the same in one case as in the other, and cites as one of his authorities, 10 C. J. 380, §581. This authority, after stating the rule with reference to delivery in bad condition, in harmony with appellee's contention, then says:  "An important limitation on the foregoing principles, recognized by some decisions and perfectly sound in principle, is that where a recovery is sought for the sickness of live stock in transit, or from death resulting from sickness, the burden is on plaintiff to prove the carrier's negligence."   Among the cases cited in support of the limitation, is *Illinois Cent. R. Co.* v. *Word* (1912), 149 Ky. 229, 147 S. W. 949, in which case the court says:  "Where a recovery is sought for sickness of live stock in transit, or for death resulting from sickness, the burden does not shift, but remains all the while upon the plaintiff, for the sickness or death from sickness of the animal may be due to a diseased condition existing at the time of or prior to its shipment, though undiscovered by its owner or the carrier, or may be due to atmospheric, climatic or other conditions, over which the carrier had no control, and for

which it would in no event, be responsible." Other authorities are *Weed & Rosengren* v. *I. & G. N. R. Co.* (1899), 21 Tex. Civ. App. 689, 53 S. W. 356; *Louisville, etc., R. Co.* v. *Wathen* (1899), (Ky.) 49 S. W. 185; *Boland* v. *Chicago & N. W. R. Co.* (1915), 159 Wis. 609, 150 N. W. 969; *Stone* v. *Chicago R. I. & Pac. R. Co.* (1910), 149 Iowa 240, 128 N. W. 354; *Gillespie* v. *Louisville, etc., R. Co.* (1910), 144 Mo. App. 508, 129 S. W. 277. In the last case cited, the court says: "It was not sufficient to show that the animals standing on the track, under the circumstances, were more likely to contract pneumonia, than if standing in a barn or in a car while it was moving; but it was necessary to show that the animals did contract pneumonia by reason of the fact that they were standing on the sidetracks." The foregoing cases all involve sick or diseased animals when delivered at destination. In the instant case, there was no sick animal, until three days after delivery, and then it does not appear by competent evidence, that the disease was pneumonia. It appears by the affidavit of Amos F. Nelson, veterinary, attached to the motion for a new trial, that the disease was an infection very prevalent among cattle which had passed through public stockyards during his four years' experience in control work as state veterinarian, and more prevalent among cattle shipped from the west and northwest. As the burden was with the appellee under the circumstances of this case to show the kind of sickness, and as he had two veterinarians to treat his cattle, appellant was justified in presuming that appellee would have these veterinarians present at the trial to testify, and appellant should not be charged with want of diligence

3. in failing to produce them. The undisputed evidence in this case is far short of showing that the sickness of the cattle involved was the result of the negligence of appellant.

The shipping contract between appellant and appellee, provides that in the event a claim is to be made, the shipper shall make out and file a verified and de-

4, 5. tailed statement of such claim, and the reason therefor, in five days from the delivery of such stock at destination. This provision is valid. *Northern Pac. R. Co.* v. *Wall* (1916), 241 U. S. 87, 36 Sup. Ct. 493, 60 L. Ed. 905; *Cleveland, etc., R. Co.* v. *Rudy* (1909), 173 Ind. 181, 89 N. E. 951. If there had been a valid claim, the fact that the disease did not develop for three days, would be a reasonable excuse for not presenting the claim in five days. But this condition certainly would not relieve appellee entirely from giving any notice or presenting any claim within a reasonable time. A failure to give notice, or to present any claim for seventy-five days was a violation of the contract. Appellant should have had an opportunity to investigate as to its liability within a reasonable time, and while the cattle were sick.

Other errors are presented, but we deem it wholly unnecessary to consider them. The judgment is reversed, with instruction to the court to grant a new trial.