CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY v. CHARLES SCHULDT ET AL.

FILED OCTOBER 22, 1902.  No. 11,356.

Commissioner's opinion, Department No. 1.

1. **Railroads: SHIPPING STOCK: FREE TRANSPORTATION: NEGLIGENCE.** Where a shipper agrees to personally accompany and care for the watering of live stock transported by a railway company, and is given free transportation for that purpose and is supplied with proper facilities, he can not complain of an injury arising from lack of such care in the matter of watering, arising out of his own fault.

2. **Agreement With Shipper to Accompany Stock: LIMITED LIABILITY.** The agreement that the shipper shall accompany the stock and be responsible for its care is, when proper facilities are supplied, not a limitation of the carrier's liability as contemplated by section 4, article 11, of the state constitution.

3. **Care of Live Stock Incident to Transportation: CARRIER'S CONTRACT.** The care of live stock while being transported is

a mere incident to its transportation, and transportation agencies have the right to contract against their assumption of liability that accrues to them merely as bailees, and in common with other bailees, and not strictly as common carriers.

ERROR from the district court for Cuming county. Tried below before EVANS, J. *Reversed.*

*John B. Barnes, Benjamin T. White* and *James B. Sheean* (*Thomas Wilson,* of counsel), for plaintiff in error.

*W. W. Sinclair* and *Ira Thomas, contra.*

DAY, C.

On July 1, 1897, the plaintiffs shipped fifty-eight head of hogs over the defendant's railway from Bancroft, Nebraska, to South Omaha, Nebraska. The hogs were loaded on the car about nine o'clock in the evening and when delivered to the consignee at the place of destination upon the following morning, twenty-two were dead, and the rest were in a very bad condition, on account of being overheated. The plaintiffs charge that the injury was the result of the failure of the defendant to pour water over and upon the hogs at different stations along the route, and in this particular it was alleged that it was necessary to the safe and proper transportation of said hogs that they be so watered. The answer, among other things, alleged that at the time the defendant received said car of hogs from the plaintiffs it entered into a contract with the shippers, which contained a clause as follows: "The said shipper agrees to load, unload and reload all of said stock at his own expense and risk, and to feed, water and attend to the same at his own risk and expense, while it is in the stock-yards of said company awaiting shipment, and while on the cars, or at feeding or transfer points, or where the same may be unloaded for any purpose"; that for the purpose of carrying out the contract and enabling the plaintiffs to do so, the defendant furnished the plaintiffs free transportation for one person to ride on its train from Bancroft to South Omaha, to care

for, look after and water said stock according to the terms of the contract; that plaintiffs accepted said free transportation, and put a person as their agent on said train, who took charge of said carload of hogs, and that said agent went through to the point of destination to perform plaintiffs' part of said contract; that said agent so in charge of said stock never at any time informed the defendant's servants, agents or employees in charge of said train, that said hogs needed or required water, or any other care whatsoever; that said agent never at any time requested defendant to water said hogs or permit the said agent to do so; that defendant had no knowledge of the condition of said hogs, but relied upon the agent of plaintiffs to look after them, and request the defendant to water them when necessary; that defendant's agents, servants and employees were at all times ready and willing to water said hogs whenever notified or requested to do so; that if said hogs were killed or injured for want of water or care, it was through no fault or negligence on the part of the defendant, but that the same occurred wholly and solely on account of the negligence of plaintiffs' agent in not looking after, caring for and ascertaining the condition of said hogs, and informing the defendant of the necessity of watering them. A demurrer to the portions of the answer above referred to was sustained. The trial resulted in a verdict and judgment for the plaintiffs, to review which the defendant has brought error to this court.

The real question presented by the record is whether a shipper of live stock, who agrees to look after and care for stock during its transportation, and who, for the purpose of carrying out the contract, receives free transportation, can recover for injuries to the stock, arising from his own neglect to properly care therefor. On behalf of the plaintiffs it is contended that the provision of section 4, article 11, of our constitution, which provides that "the liability of railroad corporations as common carriers shall never be limited," applies to cases of this kind, and

that the railroad company is liable as an insurer.. It may be granted that ordinarily, and when no special agreement is made, it is the carrier's duty to attend to the watering of live stock in such a way as to prevent loss from the lack of it. So much is conceded by the railway company in this case. It is not thought, however, that this liability is the consequence of the contract being one for carriage. It is just as much the incident of any other bailment of a live animal. It would be as much the duty of óne who should undertake to yard or pasture these hogs as it would of a transportation company. It is a mere incident of the possession and control of another's live property. As an incident, only, of the contract of carriage, and not a necessary part of it, there seems no reason why this duty may not be retained by the owner, where he is taken along in charge, and given all necessary facilities to perform it. Such was the allegation in this case. The agreement seems not to have been a limitation on the liability of the company as a carrier, but a provision that the incidental duty as a bailee of caring for this stock should not devolve upon the company, in consideration of its taking the owner along free of charge, and furnishing him with facilities for attending to it. There seems no good reason for holding that a carrier may not make an agreement of this character, as well as a stable or pasture keeper who should take stock on condition that its owner should see to the watering and care thereof, so long as the conditions of the transportation do not prevent its being done. It does not seem possible that our constitution was intended to prevent freedom of contract as to matters merely incidental to the contract of transportation and not peculiar or necessary to it. Nor does such seem to be the holding in other states having statutory provisions. similar to our constitution. *Grieve v. Illinois C. R. Co.*, 104 Ia., 659, 74 N. W. Rep., 192; *Oxley v. St. Louis, K. C. & N. R. Co.*, 65 Mo., 629; *Texas & P. R. Co. v. Stribling*, 34 S. W. Rep. [Tex. Civ. App.], 1002.

In *Grieve v. Illinois C. R. Co., supra,* the court was dealing with a statute as follows: "No contract, receipt, rule or regulation shall exempt any railway corporation * * * from the liability of a common carrier, * * * which would exist had no contract, * * * been made or entered into."* The facts in that case were very similar to the case at bar. It was held that it was competent for the company to employ the shipper to take care of his own stock, and that he could not recover for loss occasioned by his own negligence.

The citation of Nebraska cases entirely fails to show that this contract by the owner to look after the feeding and watering of his stock in transit is one of the limitations on the carrier's liability which the constitution forbids.

In *Missouri P. R. Co. v. Vandeventer,* 26. Nebr., 222, the contract held bad was one requiring claims for damages to be made before the removal of the stock, and limiting the amount of recovery to a specific sum.

In *St. Joseph & G. I. R. Co. v. Palmer,* 38 Nebr., 463, the contract was an agreement limiting the liability to injury on defendant's own lines.

In *Union P. R. v. Marston,* 30 Nebr., 241, the validity of the agreement was expressly stated to be not considered.

In *Chicago, B. & Q. R. Co. v. Gardiner,* 51 Nebr., 70, the contract limiting the amount of liability to a specific sum on a horse shipped from Illinois, was held bad, although good in that state; and *Chicago, R. I. & P. R. Co. v. Witty,* 32 Nebr., 275, was cited as holding the same conclusion.

We are cited to no Nebraska case expressly passing upon the kind of agreement presented by the case at bar, but in *Chicago, B. & Q. R. Co. v. Williams,* 61 Nebr., 608, 611, 55 L. R. A., 289, this court declares: "The rule is not doubted that where the owner is in charge of live stock in transit, the burden is on him to show a loss caused by the carrier's negligence." Evidently, if to recover the owner must show the carrier's negligence, the latter is

---

*Code, sec. 2074.

not chargeable simply as an insurer. It is equally evident that if the carrier's negligence must be shown, a loss caused by the shipper's own default can not be recovered for.

It is not thought necessary to discuss further the questions relating to instructions and the admission of evidence. The errors complained of in these respects seem to grow out of the conception of the trial court that the contract in question is entirely void.

We think it entirely competent for a carrier, where the owner or his employee is carried for that purpose, and where ample facilities are furnished the shipper to do so, to agree with him to look after, feed and water his stock in transit. It follows, therefore, that the court erred in sustaining the demurrer to the answer and rejecting the evidence of the contract.

We therefore recommend that the judgment be reversed, and the cause remanded to the district court for a new trial.

HASTINGS and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause is remanded.

REVERSED AND REMANDED.

