## LIABILITY FOR INJURY TO LIVE STOCK IN TRANSIT.

Common Pleas Court of Cuyahoga County.

ARION L. THOMAS v. THE BALTIMORE & OHIO RAILROAD COMPANY.

Decided, July 28, 1914:

*Railways—Limitation of Carrier's Liability Void, When—Void Clauses Do Not Render Entire Shipping Contract Void—Negligence of Shipper of Horses Defeats Recovery for Loss Sustained.*

1. A shipper of horses by rail is not bound by a special exemption clause in the contract of shipment, limiting the value of each animal to one hundred dollars, but he may show that the real value of an animal injured or killed in transit was more than one hundred dollars, if such be the fact.
2. A shipper who crowds twenty-one horses into a car, and finds upon arrival at destination that one of them has been so injured that it is necessary to kill it, can not recover one hundred dollars or any other sum from the carrier, in the absence of any showing of negligence on its part.
3. Failure to file a claim for damages on account of such loss for more than eight months after its occurrence constitutes a bar to recovery thereon under the provisions of the shipping contract in this case.

*Hart, Canfield & Croke,* for plaintiff.
*White, Johnson, Cannon & Neff,* contra.

FORAN, J.

October 11, 1912, the plaintiff, Arion L. Thomas, filed a statement of claim against the defendant, the Baltimore & Ohio Railroad Company, in the municipal court of the city of Cleveland, Ohio, alleging that the defendant is a corporation doing business in Ohio, and is a common carrier; that on February 1, 1912, he shipped over the defendant's road twenty-one horses, and while said horses were in possession and control of the defendant the back of one of the horses, and which was sound and in good condition when placed on the car, was broken through the carelessness and negligence of the defendant company, to

his damage in the sum of $100.   The case was tried to the court
and judgment rendered in favor of the plaintiff for said sum of
$100.   The defendant filed a motion for new trial, which was
overruled, to which action of the court in overruling the said
motion, the defendant excepted and prosecutes error to this
court to reverse said judgment of the municipal court.   The
parties will be treated here in the same relation in which they
stood in the court below. It does not appear that the defendant
filed a statement of defense.   In the petition in error the defend-
ant states seven grounds of error.   The fifth that "the judgment
of the court is contrary to the weight of the evidence and con-
trary to law" will only be considered.   From the record it
appears that the plaintiff's evidence was confined solely to his
own testimony—no other witness in his behalf being called.
Substantially the plaintiff's evidence is to the effect that he
purchased the horses from the Riverside Horse & Mule Com-
pany of Pittsburgh, Pa., for the Cleveland market; on or about
February 1, 1912, he helped to load the horses on a stock car of
the Baltimore & Ohio Railroad Company; that there were twenty-
one horses so loaded and shipped to Cleveland, Ohio; that when
the car containing these horses reached Cleveland one of the
horses was injured; that its back was broken and it had to be
killed; that the value of the horse so injured and killed was
$100, and further that he had employed no one to accompany
the horses to Cleveland and did not do so himself.   Although the
plaintiff in his statement of claim alleges that the horse had his
back broken through the carelessness and negligence of the de-
fendant, he tendered no evidence in support of this claim.   He
relied wholly upon the implied contract of indemnity arising
from the common law doctrine of the carrier's engagement to
the public.

It is undoubtedly well settled that at common law a com-
mon carrier is bound to deliver the goods that have been en-
trusted to him, or their value; and he can only justify or ex-
cuse a default where a loss occurred by an act of God, by public
enemies, the conduct of the shipper, by the inherent nature of

the goods, or unless special exemption has been agreed upon by contract, the terms of which are not against public policy. This is not strictly speaking a common law doctrine, for the law that makes a common carrier an insurer, and his engagement to the public a contract of indemnity, is founded on the Praetorian edict of the civil law found in the ninth title of the fourth book of the Pandict. This rule, sweeping away all secondary questions as to the conditions of culpability on part of the carrier, through or under which loss or damage may have occurred, has necessarily undergone considerable modification by reason of changing conditions in modes of transportation and the character of things or goods transported.

At the conclusion of the plaintiff's testimony the defendant interposed a motion for judgment for the defendant, which motion the court overruled. This ruling of the court was proper as a *prima facie* case had been presented. The allegation of the plaintiff that the loss was due to the carelessness and negligence of the defendant might properly be treated as mere surplusage. The burden is upon the defendant to show, under the general rule, that that loss was due to an act of God, public enemies, conduct of the shipper, or that exemption had been agreed upon by contract between the parties. The question whether the burden was upon the defendant to show that the loss was due to te inherent nature or character of the shipment is not so well established.

The testimony of the defendant, as disclosed by the record, conclusively establishes: first, that the horses were shipped on the 31st day of January, 1912, at the Alleghany, Pa., station of the defendant by the Riverside Horse & Mule Co. as shipper or consignor, consigned to E. L. Thomas, Cleveland, Ohio, as consignee; second, that on the day of the shipment the consignor, the Riverside Horse & Mule Company, and the defendant carrier, the Baltimore and Ohio Railroad Company, entered into a contract for this shipment, and signed, by its duly authorized agent, a usual standard uniform live stock contract, which was also signed by the Riverside Horse & Mule Company, by its agent,

one Samuel West, in the presence of and witnessed by one W. L. Dawson, an agent of the defendant; third, that the consignor, the Riverside Horse & Mule Company, sent with the horses, as caretaker thereof, one Edward Jones; that on the back of the contract appears this stipulation:

"Release for man or men in charge.

"In consideration of the carriage of the undersigned upon a freight train of the carrier or carriers named in the within contract without charge, other than the sum paid or to be paid for the carriage upon said freight train of the live stock mentioned in the said contract, of which live stock I am in charge, the undersigned does hereby voluntarily assume all risk of accident or damage to my person or property, and does hereby release and discharge the said carrier or carriers from every and all claims, liabilities and demands of every kind, nature and description for or on account of any personal injury or damage of any kind sustained by the undersigned so in charge of said stock, whether the same be caused by the negligence of the said carrier or carriers or any of its or their employes or otherwise.

"(Signed)    EDWARD L. JONES,
                    Signature of man in charge.
"(Signed)    W. L. DAWSON, Witness."

The plaintiff claims he had no knowledge of the fact that Edward Jones accompanied the horses to Cleveland, Ohio, but that the said Jones did so, and that he performed the usual duties pertaining to caretaker of the horses, clearly appears from the defendant's evidence. The plaintiff did testify that he helped load these horses at Alleghany, Pa.; and while it is true that title to the goods passes to the purchaser upon delivery to the carrier (State v. Mullen, 78 O. S., 358), yet it is undoubtedly true that the Riverside Horse & Mule Company, from whom the plaintiff purchased the horses, was the agent of the plaintiff in making this shipment and signing the contract. Either this, or the plaintiff, as a matter of convenience, had the Riverside Horse & Mule Company act as consignor in order to avoid appearing as both consignor and consignee himself. In any event it will be held that the plaintiff having admitted he was present

and helped to load the horses, he knew that the Riverside Horse & Mule Company signed this contract in his behalf, and was acting as his agent in so doing, as the defendant in no event would receive the horses unless its freight was paid or secured, or it knew from whom the horses were received and to whom they were consigned. The contract contains the following stipulations:

First. "That said shipper, or the consignee, is to pay freight thereon to the said carrier at the rate of .......... per .........., which is the lower published tariff rate based upon the expressed condition that the carrier assumes liability on the said live stock to the extent only of the following *agreed valuation, upon which valuation is based the rate charged for the transportation of the said animals,* and beyond which valuation neither the said carrier nor any connecting carriers shall be liable in any event, whether the loss or damage occur through negligence of the said carrier or connecting carriers or their employes or otherwise. If horses or mules—not exceeding one hundred dollars each."

Second. "The said carrier or any connecting carrier shall not be liable for or on account of any injury sustained by said live stock occasioned by any or either of the following causes, to-wit: Over-loading, crowding one upon another, kicking or goring, suffocating, fright, burning of hay or straw or other material used for feeding or bedding, or by fire from any cause whatever, or by heat, cold, or by changes in weather, or for delay caused by stress of weather, obstruction of tracks, by riots, strikes, or stoppage of labor or causes beyond their control."

By the first stipulation the defendant seeks to procure exemption from responsibility for loss arising from its own acts of negligence as a common carrier, and to that extent it is, therefore, contrary to public policy, void, and of no effect (*Welch* v. *Railroad Company,* 10 O. S., 68); but as this stipulation only fixes the damages in case of loss at $100 for each horse, and as the plaintiff only claims $100 damage for the horse injured and lost, this stipulation is immaterial and does not affect the question of liability. The plaintiff was not bound by this paragraph of the contract of special exemption, and might have shown the value of the horse was more than $100,

if in fact the value was greater.   In other words, he could show the real value of the horse and recover therefor provided the defendant was liable for the loss.   The second paragraph or stipulation of the contract which is a contract of special exemption from responsibility for loss arising from over-loading, crowding one upon another, kicking or goring, suffocating, fright, heat, cold, or by change in weather, or for causes beyond their control, does not, in our opinion, fall within the inhibition of being against public policy.   The clause in this stipulation, "or fire from any cause whatever," is obnoxious to the rule, as fire, if one had occurred, might be due to the negligence of the defendant; but as the loss did not occur through fire, we are not concerned with this clause in the stipulation.   We hold, however, that the defendant had a right to contract for exemption from liability for over-loading, crowding one upon another, kicking, suffocating, fright, cold, heat, change in weather, or for loss from any cause beyond the control of the carrier.   By the use of the words "or for causes beyond their control," the defendant did not seek to procure exemption from responsibility for loss arising from its own acts of negligence, or failure to perform the duties incident to its employment as a common carrier.   That liability of the carrier may be qualified and limited by special contract is well settled in Ohio and elsewhere.   *Davidson* v. *Graham*, 2 O. S., 131.

In *Graham & Co. Davis & Co.*, 4 O. S., 362, it is said in the syllabus that:

"A common carrier, by special contract with the owner of goods intrusted to him, may so far restrict his common-law liability as to exonerate himself from losses arising from causes over which he had no control, and to which his own fault or negligence in no way contributed."

To what extent, however, this exemption from liability may be provided for by special contract between the parties is a question upon which the authorities are not fully agreed.   In England the authorities seem to hold that the carrier may stipulate for exemption from all liability, even for gross negligence or positive misfeasance.

In *Halsapple* v. *Rome, etc., Ry. Co.*, 86 N. Y., 275, a stipulation specifically and in express terms exempting the carrier from liability, although due to the carrier's negligence, is held valid and binding. This is not the law, however, in Ohio. In most states the right of the carrier to, by special contract, exempt itself from liability, is more liberally construed than in this state.

In *Welch* v. *Railroad Company*, 10 O. S., Scott, J., says, page 72:

"But in this country, whilst the right of a carrier is generally recognized to contract for exemption from that extraordinary responsibility imposed by the common law, which makes him an insurer, yet the validity of contracts providing for exemption from liability for his own misfeasance or gross negligence, has been frequently, if not generally, denied, upon grounds of public policy."

The doctrine of this case as laid down in the syllabus is:

"A railroad company, acting as a common carrier of live stock, can not, by a special contract, procure exemption from responsibility for losses arising from its own neglect of the duties incident to such employment."

See also *Railway Company* v. *Sheppard*, 56 O. S., 68.

Again in this case on page 74 the court say:

"He can not stipulate for a less degree of care and diligence, in the discharge of his duty, than that which pertains to his trust as a bailee for hire."

The law is well settled that the degree of care and diligence required of a bailee for hire is that which a prudent man would use and exercise towards his own property. The contract contains this further stipulation:

"That the said shipper is at his own sole risk and expense to load and take care of, and to feed and water said stock whilst being transported * * * and to unload the same, and neither said carrier nor any connecting carrier, is to be under any liability or duty with reference thereto except in actual transportation of the same."

Plaintiff testified that he helped to load the horses on the car and that he unloaded them. He knew just how they were loaded, and as he contracted to load and unload them, he can not blame the carrier if they were crowded or if too many horses were placed in the car. Nowhere in the record does it appear that the carrier was in the slightest degree negligent. The car came through on schedule time. No fault is found with the car itself, that is, the car in which the horses were loaded. There is no evidence that there was any unusual switching or bumping of the cars, or that the train was anywhere uncoupled, side-tracked, or subjected to any unusual condition, stress, or strain; indeed, the record is as silent as the grave as to a single act of negligence on the part of the defendant. The plaintiff relies solely and wholly upon the theory, that having placed the horse in the car at Alleghany, Pa., he was entitled to the horse in the same condition it was when he loaded it or its value at Cleveland, and yet the contract provides that the defendant shall not be liable for loss arising from causes beyond its control, and this provision, or one similar thereto, has been usually held valid. In *Davidson v. Graham*, 2 O. S., 131, *supra,* a contract which exempted the defendant from liability for the dangers of river, fire, and unavoidable accident, was held valid. There being no evidence as to how the horse was injured, it must be presumed the injury was the result of unavoidable accident, and as the contract in this case exempts the defendant from liability "for causes beyond their control," it can not be held liable for such accident.

The Legislature, in the enactment of Section 8993-2, G. C., passed in 1912, seems, to have had in view the doctrine enunciated by Judge Scott in *Welch v. Railroad Company, supra,* for this section provides:

"A carrier may insert in a bill issued by him any other terms and conditions provided that such terms and conditions shall not (a) be contrary to law or public policy; or (b) in any wise impair his obligation to exercise at least that degree of care in the transportation and safe-keeping of the goods entrusted to him, which a reasonably careful man would exercise in regard to similar goods of his own."

This is exactly the degree of care required of a bailee for hire. If a carrier seeks to relieve himself from liability by reason of a valid agreement limiting his liability, the burden on him is to show that the loss was due to one of the exceptions contained in the contract, and that such carrier was free from negligence. 2 O. S., 131; 4 O. S., 362; 26 O. S., 595; 28 O. S., 144; 28 O. S., 418.

The burden is on the carrier to show, not just how the loss occurred, but the burden is on him to show that it was not due to any fault or negligence of the carrier. In the nature of things, it may not be possible to show by affirmative proof just how the loss occurred, but when the carrier does show that there was no defect in the car, as was shown in this case, and that there was no negligence in the operation of the train while en route, and that there was no negligence in any respect by its employees, it must follow inevitably that the loss occurred from causes beyond its control. While it is true that stipulations varying or limiting the liability of the carrier must be strictly construed (*Paddock* v. *Railroad Company*, 21 O. C. C., 626), yet where injuries to live stock in transit are such that they are as likely to have been caused by the nature of the animals as by the negligence of the carrier, the court can not assume the injuries were caused by the negligence of the carrier. *Lewis* v. *Penna. Railroad Co.*, 70 N. J. L., 132; 56 A. T. L., 128, affirmed 59 A. T. L., 1117; 71 N. J. L., 339.

If there is a conflict of evidence, or if more than one conclusion can fairly be drawn from the facts, the question as to how the loss or injury was caused is fairly one for the jury to determine from all the facts and circumstances of the case. *Estill* v. *N. Y., etc., R. Co.*, 147 U. S., 591; *St. Louis, etc., R. Co.* v. *Weakly*, 50 Ark., 397; *Ball* v. *Wabash, etc., R. Co.*, 83 Mo., 574.

The preponderance of the testimony in the case before us clearly shows that the injured horse was an old, bony, weak, ill-conditioned animal. The car was closely packed, there being twenty-one horses standing side by side, each taking three or more feet of space, and under the circumstances, it was undoubtedly a question of the survival of the fittest. Besides, the

contract provides that the owner should care for the horses en route, and the evidence shows that a man actually was sent along with the consignment for that purpose. As has been said plaintiff testified that he helped to load and unload the animals, and under such circumstances the authorities hold that the burden was on him to show the negligence of the carrier was the proximate cause of the injury. *Louisville, etc., R. Co.* v. *Harned,* 23 Ky. L. Rep., 1651; *Needy* v. *Western Maryland R. Co.,* 22 Pa. Supr. Ct., 489; *Cleveland, etc., R. Co.* v. *Crawford,* 24 O. S., 631; *Chicago, etc., R. Co.* v. *Carey,* 115 Ill., 115.

The carrier is relieved from liability or responsibility upon proof that it has provided suitable means of transportation and has exercised the degree of care which the nature of the property requires, as the presumption then arises that the animals were injured by reason of their inherent nature. *Hayman* v. *Philadelphia, etc., R. Co.,* 8 St. Rep.. (N. Y.), 86; 54 N. Y. Sup., 158; 60 Miss., 1017; 66 Miss., 319.

If, however, the carrier fails to show that it has provided suitable means of transportation, and has failed to show that it exercised that degree of care which the nature of the property requires, the burden is on the carrier to prove affirmatively that the injury and loss occurred through the inherent nature or proper vice of the animals. *Fort Worth, etc., R. Co.* v. *Greathouse,* 82 Tex., 104.

It is claimed, however, that this doctrine is not the law in Ohio, and *William* v. *Hamilton,* 4 O. S., 723, is cited in support of the proposition. We think the doctrine of this case is largely misunderstood. The real question decided by this case is that a ferryman occupying a position in a line of public travel, and holding himself out for general employment, is a common carrier; in other words, that the doctrine of common carrier is extended to ferrymen. The case is largely cited by courts and text-writers, always in support of the proposition that ferrymen are common carriers. The facts of the case clearly show that the horses of the plaintiff were lost through the gross negligence of the ferryman in not providing a gate or bars so as

to prevent the animals or horses from walking off of the ferry when the machinery was started and· they were necessarily frightened thereby. In the syllabus it is said, in speaking of the ferryman, "that his responsibility for the safe delivery of living animals transported by him is the same as that in relation to the carriage of other property"; but the case does not contravene the proposition that a carrier may be exempt from liability because of the inherent character or nature of the freight or goods carried by him.

In the case of *American Express Company* v. *Smith,* 33 O. S., 511, it is said in the syllabus:

"A common carrier is not responsible for the loss of perishable property when that loss arises from the nature of the property itself."

The doctrine of exemption from liability because of the inherent nature or character of the property is so well established that it is hardly necessary to cite authorities in support of it. Even in the case of *Wilson* v. *Hamilton,* 4 O. S., *supra,* on page 742, Judge Ranney, discussing the claims of the defendant that the loss resulted because one of the horses was particularly vicious and had been frightened shortly before coming upon the boat by a train of cars, said:

"That these facts should, in good faith, have been communicated to the defendant; and that the plaintiff did not, in all respects, conduct himself properly at the time the accident happened. In our opinion, no part of this claim is sustained by the evidence. There is nothing to show that the horse was *vicious.* The greatest sin proved upon him is, that he was spirited."

The utmost to which the learned judge carried the doctrine in this case was, that if a horse was vicious, that fact, in good faith, should have been communicated to the carrier so that the carrier might take the necessary precautions to provide for his safe-keeping; but this doctrine does not apply to a case where the owner of the cattle accompanies the cattle himself and becomes responsible for their care and maintenance while en route

or in transit. That the doctrine of non-liability because of the inherent nature of goods is sound, must be admitted. Suppose a horse in transit becomes sick and dies through no fault of the carrier. Upon what principle of law should the carrier be held liable? The germs of the disease may have been in the animal before he was placed on the car. The heat, confinement, crowding, fright, want of water, and the unusual change of environment, may have caused the sickness and death. A man shipping, say, bananas from New York to Cleveland, may not be able to procure a refrigerator car and ships them in an ordinary car, and the temperature increases very largely before the car reaches Cleveland, and because of the rise in temperature the fruit is destroyed. Would the carrier be responsible? It would not be necessary in such case to say that he was relieved from responsibility by act of God, for the increase of temperature would not fall within that doctrine, as everybody must expect and anticipate such temperature as is ordinarily usual in a certain climate and latitude.

In *Schoenfield* v. *Louisville & N. R. Co.*, 49 La. Ann., 907, it was held that a carrier is not liable for the loss of a horse through sickness where it did not appear that the sickness was caused by the negligence of the carrier. The plaintiff claims he had no knowledge of the fact that the Riverside Horse & Mule Company sent a man with the horses, and yet his contract provided he should do so, else how should they have been fed and watered while in transit. If the owner of live stock place too many animals in a car, and they are injured by overcrowding, he can not recover (*Texas & P. Ry. Co.* v. *Edins*, 36 Tex. Civ. App., 639); or if he fails to accompany the stock when he has especially contracted to do so, and to water and feed the animals, and damage results from this failure on his part, he can not recover. *Cent. of Ga. Ry. Co.* v. *James*, 117 Ga., 832; *Chicago, etc., R. Co.* v. *Schuldt* (Neb.), 92 N. W., 162.

Carriers do not absolutely warrant live stock against the consequences of their own vitality, if the carriers are in all respects free from negligence in providing suitable cars and in the mode and manner of transportation. In the case before us,

however, apparently the trouble was not with the vitality of the animal, but the testimony seems to indicate that the trouble arose from lack of vitality in the animal. See *St. Louis, etc., R. Co.* v. *Franklin,* 123 S. W., 1150. Transporting horses in cars propelled by steam power, places them in an environment so opposed to their natural habits and instincts that they may refuse to eat, die of fright, or injure and destroy themselves in various ways, notwithstanding every possible precaution and foresight to prevent it, and if they are accompanied by the owner, or by his servant or agent, and the carrier exercises all the care and caution that the circumstances require, it would be unreasonable in the highest degree to charge him with the loss. *Clark* v. *Rochester, etc., R. Co.,* 14 N. Y., 570; *Evan* v. *Fitchburg R. Co.,* 111 Mass., 142.

In Kentucky it is held that a railroad company carrying live stock is liable for negligence, but is not an insurer. *Louisville, etc., R. Co.* v. *Harned,* 23 Ky. L. Rep., 1651.

In *Yazoo R. Co.* v. *Pope,* 61 So., 450, it is held that the carrier is not liable for injury to mules en route if no accident happened to the train, and it was properly handled, and the car in which the mules were being transported was properly equipped.

In view of the great weight of authority on the question before us, we can come to no conclusion but that the judgment of the municipal court is contrary to law and the evidence as disclosed by the record. But there is another question not presented by counsel for defendant which we think decisive of the issues involved in this case. The contract contains this clause or stipulation:

"That no claim for damages which may accrue to said shipper under this contract shall be allowed or paid by the said carrier or sued for in any court by the said shipper unless a claim for such loss or damage shall be made in writing, verified by the affidavit of the said shipper or his agent, and delivered to the Baltimore & Ohio R. R. Company's agent of the said carrier at his office in Cleveland, Ohio, within five days from the time said stock is removed from said car or cars; and that if any loss or damage occurs upon the line of a connecting carrier, then such carrier shall not be liable unless a claim shall be made in like

manner, and delivered in like time, to some proper officer or agent of the carrier on whose line the loss or injury occurs.''

The record nowhere discloses that this provision of the contract was complied with.   No claim was presented, so far as the evidence discloses, until suit was brought in the municipal court October 11, 1912, eight months after the loss for which plaintiff sues.   No claim was ever presented in writing, verified by affidavit, to the defendant's agent at Cleveland, Ohio, within five days after the horses were unloaded or at any time.

In *Pennsylvania Company* v. *Shearer,* 75 O. S., 249, it is said in the syllabus:

''A common carrier and a shipper may, in the absence of fraud, imposition, or deception, enter into a valid and enforceable special agreement requiring the shipper, in case of loss or damage, to make a verified claim for damages in writing, within a specified time, and in default thereof, that the carrier shall not be liable, provided that the period of time within which such claim shall be made is, under all the circumstances of each case, a reasonable one.''

When the plaintiff unloaded these cars at Cleveland, he says he examined the horse and claims that its back was broken.   He knew then that, if he had a claim against the carrier, it should be presented in accordance with the terms of his contract.   He at least knew he sustained the loss through some cause or other, and having waited for over eight months, he will not now be heard to press the claim.   The reason for this clause in the contract is manifest and apparent.   The carrier had a right to know at the time the horses were unloaded whether the shipper or the consignee intended to present or prefer a claim against it, so that it might ascertain the facts and circumstances, if possible, under which the animal was injured.   All of the facts were then fresh in the minds of the agents of the carrier and the person who accompanied the stock from Alleghany as the agent of the shipper, and it is no more than fair that the carrier should then be notified that a claim would be presented, so that it might procure such testimony as then could be procured.   Wait-

ing for eight months until the whole matter became vague and indistinct, and witnesses perhaps had disappeared and could not be located, are such laches upon the part of the plaintiff as will bar a recovery in this case.

It may be said that inasmuch as the contract contains certain clauses which are void as being against public policy, that the whole contract is void, but this contention can not be maintained. A shipping contract is based upon a valid consideration. The carrier performs a service, or, agrees to perform a service, for which the shipper agrees to pay, and if the service is performed, the amount agreed upon must be paid by the shipper. The whole consideration, therefore, was lawful; but even when only a part of the consideration is unlawful, the contract may be valid as to the other part. *Doty* v. *Bank,* 16 O. S., 133.

In *Page on Contracts*, Section 510, the author says:

"Bills of lading otherwise valid, containing covenants void as relieving a common carrier from liability for negligence, are not entirely invalidated thereby, but only such provision is void."

That is, a provision or provisions which are contrary to public policy are void, but the provisions of the contract that are not contrary to public policy or illegal in any way, being based upon a valid consideration, are enforceable. See Page on Contracts, Section 359, under which section all the authorities are collated and cited on the doctrine relating to contracts waiving the performance of duties imposed by law on common carriers.

For the reasons indicated, the judgment of the municipal court will be reversed, and this court, proceeding to render the judgment the municipal court should have rendered, renders judgment for defendants for costs.