FRANK STARR ET AL., APPELLEES, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT.

FILED JULY 2, 1919. No. 20510.

1. **Carriers: INJURY TO LIVE STOCK: ACTION FOR DAMAGES: BURDEN OF PROOF.** "In an action to recover damages from a carrier for injury sustained by live stock in transit, which are accompanied by the owner or his agents, the burden is on the owner to show that the loss complained of was occasioned by the carrier's negligence." *Cleve v. Chicago, B. & Q. R. Co.*, 77 Neb. 166.

2. ————: ————: INTERSTATE SHIPMENTS. The act of the federal congress, known as the "Carmack Amendment" (8 U. S. Comp. St. 1916, sec. 8604a, p. 9289), does not enlarge or change the common-law liability of carriers for injuries to live stock in interstate shipments.

3. ————: LIVE STOCK: DUTY TO FEED AND WATER. When the owner, or his agent, accompanies the shipment of stock, the duty of feeding and watering the stock when placed in the carrier's yards is primarily upon the owner. If he fails to do so, then the duty is upon the carrier. The duty is also upon the carrier to furnish the proper facilities for the feeding and watering of the stock.

4. ————: FEEDING LIVE STOCK: LIABILITY. Where the carrier fed and watered the stock, the owner being present, and it appears that some of the stock was injured by reason of poison being contained in the hay fed to them, the hay being furnished by the carrier, *held*, that in such case the carrier is not an insurer of the stock against loss by reason of the poisoned hay, but would be liable only for negligence.

APPEAL from the district court for Webster county: WILLIAM C. DORSEY, JUDGE. *Reversed.*

*E. E. Whitted, J. L. Rice* and *L. H. Blackledge,* for appellant.

*Bernard McNeny* and *J. S. Gilham, contra.*

CORNISH, J.

Plaintiffs' carload of horses being shipped from Billings, Montana, to Grand Island, Nebraska, was unloaded for feeding at Edgemont, South Dakota. It appears that poison in the hay fed to the horses damaged some and killed others. From a judgment for plaintiffs for damages sustained, the defendant appeals.

Plaintiff Frank Starr, as caretaker provided for in the shipping contract, was present at the time of the feeding, but the hay and water given to the horses were furnished and fed by the defendant at plaintiffs' expense. That poison was in the hay was not known until later, and how it got there is still unknown. One Petro, who harvested and sold the hay, testified that no poison was in it when delivered. The defendant kept it locked in a barn until used. The federal law makes it primarily the duty of the caretaker to buy and feed the hay, and the carrier's duty if he does not. 8 U. S. Comp. St. 1916, sec. 8652, p. 9381; *Chicago, St. P., M. & O. R. Co. v. Schuldt,* 66 Neb. 43; *Webster v. Union P. R. Co.,* 200 Fed. 597; 4 R. C. L. 985, sec. 451. The evidence does not show that either defendant or plaintiffs were negligent in feeding the hay.

If the action turned on negligence—on the fact that the carrier either knew, or in the exercise of ordinary care should have known that the hay contained poison—it must fail for want of evidence. But it is the plaintiffs' contention that, independent of the question of negligence, defendant must be held liable under its common-law liability as a common carrier, which liability cannot be limited by contract. The parties agree that such was the view taken by the trial judge, and it is the ground for the defendant's principal assignment of error. So the first inquiry is: What is the carrier's common-law

liability, in a shipment of stock, for injury thereto after stock was unloaded and while being fed in its yards, where, by agreement of parties, a caretaker is in attendance?

The common-law rule, making the carrier an insurer of goods in its hands for transportation, arose from the practical impossibility of shippers proving how the goods were lost. Frauds and collusions were easily practiced but hard to prove. The shipper parted entirely with his possession and control, and the carrier could pretend a robbery or accident which had not happened. In course of time the original rule was modified in certain particulars. Not only were losses occasioned by the act of God or public enemy excepted, but certain losses due to the natural propensities of the animal being shipped were also excepted.

When, by agreement of the parties, the animals shipped were attended by a caretaker, this furnished another ground for an exception to the original rule, because in such case it might be more the duty of the caretaker to anticipate and prevent the particular injury than it would be the duty of the carrier. Accordingly, the common-law rule, as applied to such a case, appears to be as announced by this court in *Cleve v. Chicago, B. & Q. R. Co.*, 77 Neb. 166, as follows: "In an action to recover damages from a carrier for injury sustained by live stock in transit, which are accompanied by the owner or his agents, the burden is on the owner to show that the loss complained of was occasioned by the carrier's negligence." In 4 R. C. L., at page 995, sec. 462, the writer adopts the language of this opinion as being the prevailing rule everywhere. In fact, while the plaintiffs in their brief argue to the contrary and cite cases, we know of no decision holding to the contrary. The rule is that when the owner, or his agent, attends the stock as caretaker, and, as in this case, the stock is being fed in the carrier's yards, the carrier, while bound to furnish facilities for feeding, is not liable as an insurer against

injury, but is only liable for negligence. The test in the instant case would be: Did the carrier know that the hay fed contained poison; or, in the exercise of ordinary care, should it have known? *Chicago, St. P., M. & O. R. Co. v. Schuldt, supra; Chicago B. & Q. R. Co. v. Powers,* 73 Neb. 816; *Zimmerman v. Northern P. R. Co.,* 140 Minn. 212; *Bigelow v. Maine C. R. Co.,* 110 Me. 105; *Lukens v. Freiund,* 27 Kan. 664.

The agreement that the shipper shall accompany the stock and shall be responsible for its care is, when proper facilities are supplied, not a limitation of the carrier's liability. *Chicago, St. P., M. & O. R. Co. v. Schuldt, supra.*

Plaintiffs in their brief cite cases from Texas as holding to the contrary. In *Pecos & N. T. R. Co. v. Meyer,* 155 S. W. (Tex. Civ. App.) 309, and in *Chicago, R. I. & G. R. Co. v. Crenshaw,* 59 Tex. Civ. App. 238, the carrier's liability is made to depend upon its exercise of ordinary care, according to the circumstances. The holding in *Chicago, R. I. & G. R. Co. v. Linger,* 156 S. W. (Tex. Civ. App.) 298, is only to the effect that a provision in the contract that the shipper should assume all risks (which would include those arising from the carrier's negligence) was void under the Carmack amendment. 8 U. S. Comp. St. 1916, sec. 8604a, p. 9289.

It is further urged that the Carmack amendment changes the rule, in that it provides that contracts between the carrier and shipper attempting to limit the common-law liability are void, and also provides that the carrier shall be liable for all injuries "caused by it." Inasmuch as the statute places the primary duty of feeding the stock upon the caretaker, permitting him to do his own buying and feeding, it would be strange if such were the meaning of the law. This question, however, is foreclosed by the decisions of the federal court, holding that it is permissible for the parties to agree upon the presence of a caretaker, and that the words above quoted were not intended to change the

Common-law liability. *Adams Express Co. v. Croninger,* 226 U. S. 491, 44 L. R. A. n. s. 257; *Missouri K. & T. R. Co. v. Harriman,* 227 U. S. 657; *Cincinnati, N. O. & T. P. R. Co. v. Rankin,* 241 U. S. 319; *Missouri, K. & T. R. Co. v. Byrne* 100 Fed. 359.

It is complained that in the argument to the jury statements were made by counsel for plaintiffs inflamatory in their character and not based upon the evidence. It is answered that counsel for defendant also was at fault. Courts fail in their function when their judgments are not in accord with the merits of the controversy. Trial judges cannot preserve the dignity and gravity of the court without the aid of the bar. The lawyer owes it to the litigant, as well as to the state, to prevent a diversion of the juror's mind from the question he has sworn to try. As we have heretofore said, when misconduct of counsel is such that no admonition or rebuke can entirely destroy its sinister influence, a new trial will be awarded, regardless of want of objection and exception.

For the reasons above shown, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

SEDGWICK, J., not sitting.

LETTON, J. dissenting.

The common-law rule which makes common carriers insurers of the safe delivery of property transported, with certain well-recognized exceptions, is a salutary doctrine and tends to the exercise of vigilance and care by the carriers. It should not be lightly interfered with, nor whittled down by exceptions, even though it may work an injustice in isolated cases.

The common-law rule is stated as follows in *Church v. Chicago, B. & Q. R. Co.,* 81 Neb. 615: "It is the general rule that a common carrier of live stock for hire is an insurer of its safe delivery to the consignee, except

where the injury or loss is due to the act of God, the public enemy, or to the inherent nature or propensities of the animals; and the delivery of the animals to the carrier in good condition and the failure of the carrier to deliver them at the place of destination makes a *prima facie* case against the carrier.''

This was an interstate shipment of horses. They were fed and watered in transit by the carrier. The hay fed them was poisoned, and a number of the horses died. A caretaker accompanied the shipment, but did not procure the hay or feed the horses. Being an interstate shipment the laws of the United States, as construed by the federal courts, control. *Cincinnati, N. O. & T. P. R. Co. v. Rankin,* 241 U. S. 319. In this case it is also held that the common-law liability of a carrier as an insurer was not changed with respect to a loss occurring on its own line by the provisions of the Carmack amendment, and it is said, speaking of the construction of the Carmack amendment in *Adams Express Co. v. Croninger,* 226 U. S. 491, ''properly understood neither this nor any other of our opinions holds that this amendment has changed the common-law doctrine theretofore approved by us in respect of a carrier's liability for loss occurring on its own line.''

Under the interstate commerce act the term ''transportation'' includes all services in connection with the receipt, delivery, elevation, ventilation, refrigeration or icing, transfer in transit, storage and handling of property transported. 8 Comp. St. U. S. 1916; sec. 8563, p. 9061.

It seems evident that the furnishing of hay at its feed-yards for the feeding of live stock which the road is compelled to perform under the 28-hour statute falls within this definition of ''transportation.'' *Southern R. Co. v. Prescott,* 240 U. S. 632. This case was decided before the Cummins amendment. Under that amendment every common carrier ''receiving property for transportation shall be liable to the lawful holder of the bill of lading 'for any loss, damage, or injury to such proper-

ty caused by it,' or by any common carrier, railway or transportation company to whom such property may be delivered," etc.

In *New York, P. & N. R. Co. v. Peninsula Produce Exchange*, 240 U. S. 34, it is said: "The words 'any loss, damage, or injury to such property,' caused by the initial carrier or by any connecting carrier are comprehensive enough to embrace all damages from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination."

In the report of the senate committee on interstate commerce accompanying the second Cummins amendment, speaking of the amendment, it is said "Its purpose is to restore the law of full liability as it existed prior to the Carmack amendment of 1906, so that when property is lost or damaged in the course of transportation, under such circumstances as to make the carrier liable, recovery is had for full value or on the basis of full value."

Under the facts, I am of the opinion that the carrier is liable, under the common law, as an insurer.

MORRISSEY, C. J., concurs in this dissent.