SIEBERT M. THOMPSON, APPELLEE, v. JAMES C. DAVIS, DIRECTOR GENERAL, APPELLANT.

FILED JUNE 27, 1923. No. 22499.

1. **Carriers:** FEEDING LIVE STOCK: LIABILITY. "Where the carrier fed and watered the stock, the owner being present, and it appears that some of the stock was injured by reason of poison being contained in the hay fed to them, the hay being furnished by the carrier, *held,* that in such cases the carrier is not an insurer of the stock against loss by reason of the poisoned hay, but would be liable only for

2 ———: ———: CARE REQUIRED. "Where the carrier undertakes to feed and water stock notwithstanding a contract imposing this duty negligence." *Starr v. Chicago, B. & Q. R. Co.,* 103 Neb. 645

on the shipper, it is bound to exercise due care to see that the stock are given suitable food and water." 10 C. J. 96, sec. 108.

3. **Evidence** examined, and *held* sufficient to sustain the verdict.

APPEAL from the district court for Keith county: J. LEONARD TEWELL, JUDGE. *Affirmed.*

*C. A. Magaw, Thomas F. Hamer,* and *Douglas F. Smith,* for appellant.

*George N. Gibbs* and *William E. Shuman,* contra.

Heard before MORRISSEY, C. J., DEAN, ALDRICH and DAY, JJ., COLBY and REDICK, District Judges.

ALDRICH, J.

This is an action at law to recover damages for the loss of certain horses and injury to others, which plaintiff alleged was caused by negligence of defendant in feeding the animals certain timothy hay at McComb, Mississippi. The shipment originated at Paxton, Nebraska, a town on the line of the Union Pacific Railroad Company, destined for Amite, Louisiana, and consisted of two carloads of horses. The Union Pacific Railroad Company and the director general of railroads were named as defendants, the shipment moving over the Union Pacific Railroad and the lines of connecting carriers. Defendant by his answer admitted the shipment, but alleged that by the shipping contract it was the duty of the shippers, at their own risk and expense, to load, unload, care for, feed and water the horses while in transit. Defendant further alleged that the injury damage resulted from negligence of plaintiff, and not from negligence of defendant. Issues were joined by plaintiff's reply, which alleged that defendant assumed to feed the horses and to provide feed and forage at McComb, Mississippi, and that defendant required plaintiff to pay for the feed. The lower court sustained the motion of the Union Pacific Railroad Company to be dismissed from the action. The trial resulted in a verdict and judgment for plaintiff in the sum of $2,677.44. Motion for new trial was overruled, and defendant appeals.

Thompson v. Davis.

In this case among the most important issues is: "Did the carrier know that the hay fed contained poison; or in the exercise of ordinary care should it have known?" This is the principal issue in the case, and "the burden is on the owner to show that the loss complained of was occasioned by the carrier's negligence." With these two issues clearly defined we should have no trouble in disposing of the merits of this case and arriving at a correct conclusion. We should remember that: "When the owner, or his agent, accompanies the shipment of stock, the duty of feeding and watering the stock when placed in the carrier's yards is primarily upon the owner. If he fails to do so, then the duty is upon the carrier. The duty is also upon the carrier to furnish the proper facilities for the feeding and watering of the stock." *Starr v. Chicago, B. & Q. R. Co.*, 103 Neb. 645.

This then adds another law question among those already quoted as to the issues to be determined in this case.

It is obvious from the record that plaintiff was the owner of the horses in question; that defendant, notwithstanding the ownership or any of the provisions of the shipping contract, undertook, as the facts appear, to feed the horses shipped for plaintiff. Then it follows and must be assumed that it guaranteed to feed these horses suitable food only and to take such other care of them as would be conducive to their good health. If in the course of the evidence it appears that defendant in feeding these horses was guilty of handing to them mouldy, dusty and smutty hay, then it would be liable for the consequences, and if it failed to exercise proper caution in feeding these horses then it would be guilty of negligence. It must be conceded by the record that defendant knew from its mouldy condition that the hay contained a certain poisonous substance. Then it would be liable under these circumstances and undisputed facts for whatever damage resulted by reason of feeding the same.

The case of *Starr v. Chicago, B. & Q. R. Co. supra,*

would be in point and the law therein announced governs this transaction. The law of this case governs the propositions that control this matter and is as follows: "Where the carrier fed and watered the stock, the owner being present, and it appears that some of the stock was injured by reason of poison being contained in the hay fed to them, the hay being furnished by the carrier, *held,* that in such case the carrier is not an insurer of the stock against loss by reason of the poisoned hay, but would be liable only for negligence."

It is admitted as a matter of record that some poisonous substance was the proximate and immediate cause of the deaths of those horses which died and the damage to others. This being true, then there is but little, if any, use of discussing any other issues of the case because they become obvious.

We might by way of quoting further say: "Where the carrier undertakes to feed and water stock notwithstanding a contract imposing this duty on the shipper, it is bound to exercise due care to see that the stock are given suitable food and water." 10 C. J. 96, sec. 108.

We adopt this as the rule of law as governing here in this case.

Alos in the case of *Louisville & N. R. Co. v. Tharpe,* 11 Ga. App. 465, we find the following language: "The evidence was conflicting. It may be that, under the terms of the contract requiring the shipper or owner to accompany the stock and feed and water them, the railroad was not bound to feed the stock. See, in this connection, *Weaver v. Southern R. Co.,* 11 Ga. App. 355. When the carrier undertook to feed and water the stock, it was, of course, bound to give them proper food, and exercise at least ordinary care and diligence in feeding and watering them. While there was direct evidence in behalf of the carrier that the food given the stock at Montgomery was not defective in any respect, there was evidence from which the jury were justified in finding that the stock were improperly fed at Montgomery, and that this improper

feeding was the cause of the death of eight of the mules. This being so, it can not be said that the jury were not authorized to find that the defendant had failed to overcome the presumption of its negligence arising from proof of the damage."

There is ample and sufficient competent evidence to sustain the verdict of the jury. Plaintiff in his testimony detailed what kind of hay was fed to the horses. The bales looked all right on the outside, but when opened showed a dusty and mouldy condition. He objected to the hay; but was told that it was "none of his business." At that time three bales had been given to the horses. The remainder, four bales, was fed while plaintiff was eating breakfast, disregarding his order to give them no more of that hay. Plaintiff also testified that the horses were in good shape when they arrived at McComb, that several of them died at Amite, and that they were all more or less sick. The veterinarian, who made a *post-mortem* examination of the dead animals at the instance of the railroad company, testified that they died from forage or food-poisoning. Every one showed symptoms of enteritis or intestinal trouble. On the main issue of whether or not the carrier was negligent in feeding spoiled hay, there was a substantial conflict in the evidence, and for the reasons given we will not disturb the jury's finding.

The law in this class of cases is shown to be clear, well-defined and positive, and leaves no room to doubt or guess what is the duty of the court in deciding the issues presented. Therefore, with this brief discussion and enumeration of points, we say this case without doubt should be affirmed.

AFFIRMED.